OPINION
Defendant-appellant Everett Grider appeals from his convictions following a bench trial for rape (R.C. 2907.02), kidnapping (R.C. 2905.01) and aggravated burglary (R.C. 2911.11) Defendant claims that the indictment was defective; the evidence was insufficient; defendant was convicted of allied offenses in violation of double jeopardy standards; the defendant was prejudiced by inadmissible testimony; the trial court erred in finding defendant to be a sexual predator; in not advising of defendant's post-release obligations as a sexual predator; erred in sentencing without the requisite findings; and was prejudiced by ineffective assistance of counsel. We affirm in part and reverse and vacate in part the convictions; vacate the sexual predator classification; remand for resentencing.
Marilyn Hamick, the victim's mother, shared her home at 1295 west 65th Street, Cleveland, Ohio with her bed-ridden mother and four of her six children. Her daughter, Naysa Sargent, the fifteen-year-old victim, had cerebral palsy due to loss of oxygen at her birth on May 13, 1983. A trach tube was inserted at age ten months due to constant bouts with pneumonia. Naysa was fed formula five times a day through a tube that is permanently placed in her side. On May 6, 1998, she was enrolled in the 8th grade at Gallagher Middle School in classes for children with physical disabilities, but who are not mentally retarded. Her mental age was two years behind in some things and current in others. She walks with a limp and only short distances. She is able to write some letters, but "shakes a lot." She uses a communication board at school. She communicates also with some sign language, noises and often can speak words when she holds the trach tube.
On Wednesday, May 6, 1998, at about 6:00 p.m., almost everyone in the Hamick home was sleeping due to the flu. Mrs. Hamick, before lying down, asked her son, Kenneth to feed and watch Naysa. A short time later, she was awakened by screams of her sister-in-law, Betty Miller. She walked through the hallway and observed her daughter, Naysa, "stark naked." She described Naysa as being very upset and crying. Naysa told her "the man hurt me" and pointed to her arm and her vagina. The man was later identified as defendant.
At the emergency room of Lutheran Hospital, Naysa acted out that the man stuck his tongue down her throat. The mother also observed bruising on Naysa's left arm. The medical records also reflect abrasions of her right upper back area and a reddened vagina area. Naysa showed the doctor, Christopher Sivak, M.D., how her attacker covered her mouth with his hand during the assault.
Betty Miller and her husband lived four houses away from their niece, Naysa Sargent. On May 6, 1998, the Millers were watching TV at about 6:00 p.m. when Naysa knocked on their door. They asked Naysa if her mother knew she was there and she replied in the negative. They told her to go back home as they had a rule that her mother must know if Naysa leaves the house. Naysa then left and they assumed she walked home. Fifteen minutes later, Kenneth Hamick, Naysa's brother, came to the Miller home looking for Naysa who had not returned home. They became concerned and started to look for Naysa. Mrs. Miller entered Naysa's home and talked to her bed-ridden mother-in-law. She then went to the bedroom of her nephew, Joshua. She opened the door and observed Naysa, naked, and the defendant lying on the bed with no shirt on, his pants unzipped and his genitals exposed. She yelled for her husband, saying "the son of a bitch raped Naysa." The defendant zipped up and tried to leave the room but was confronted by Betty's husband, Wilbert Miller. Defendant appeared to be drunk. She described Naysa as being upset, crying, grabbing her vagina saying, "it hurt." Betty then called 911 and the police and an ambulance responded. Defendant was arrested at the scene.
Wilbert Miller testified that he sent Naysa home on the day in question. After Kenneth reported that she had not arrived home, Miller walked to Naysa's home along with his wife, Betty and Kenneth. He sent Kenneth around the corner to Herman Park to see if she had gone there. While conversing with a neighbor across the street from Naysa's home, he heard his wife Betty yelling "oh my God, oh my God, this S.O.B. raped Naysa." Wilbert ran through the house and observed defendant standing in a doorway with no shirt on. He detained defendant until police arrived. He described defendant as being intoxicated. He saw defendant earlier that afternoon drinking with some other men on the front steps of the Miller home. The Millers lived downstairs and the upstairs was rented as sleeping rooms to single men. He recalled that defendant was present when Naysa first walked up to his house before being sent home. Wilbert described Naysa in the hallway as being completely nude and making gestures with her hands and arms indicating that defendant had had sex with her and that he hurt her.
Having been earlier qualified as a competent witness, Naysa Sargent testified that she lived on West 65th Street in May 1998. She testified she did not give defendant permission to enter her home on May 6, 1998. She positively identified the defendant and said that he had sexual intercourse with her without her consent.
On cross-examination, Naysa stated that she first saw defendant when she was in front of her Aunt Betty's house. She then stated that defendant walked home with her. She indicated that defendant kissed her in front of her home. When asked if defendant asked to come into her house, she replied, "hell, no." He did not ask her to use the bathroom. She further stated that he forced his way into the house and that defendant was holding her and pushed her toward Josh's bedroom.
Det. Essie Howard of the Cleveland Police Department conducted a videotaped interview with Naysa on May 12, 1998. Also present at the interview were her mother, a social worker and an interpreter. Without objection, the tape was played for the court. During the tape, Naysa undressed the anatomically correct dolls and placed the male on top of the female doll. Naysa also related that she had said "stop" to the defendant and that she had kicked and yelled. She further related that defendant covered her mouth during his attack.
Det. Howard read into the record the written statement given by defendant to her on May 8, 1998. In it, he states he was drinking beer in front of the Miller home when Naysa arrived and was told to go home. He said he felt sorry for "the little girl. She is retarded and has a trach." He claims he followed Naysa to her home and asked to use the bathroom. After five minutes in the bathroom he opened the door and "the little girl was standing there naked." He told her to put her clothes on. A woman appeared and began screaming and her husband came in and they would not let him leave. He denied lying in the bed with his genitals exposed as Mrs. Miller had observed. He then admitted kissing the girl on the mouth. He correctly estimated Naysa's age as being fourteen.
We will address defendant's assignments of error in the order presented.
 I. WHEN THE INDICTMENT OMITTED AN ELEMENT AND FAILED TO CHARGE AN OFFENSE, THE JUDGMENT IS VOID FOR LACK OF JURISDICTION AND MR. GRIDER WAS DENIED DUE PROCESS (OHIO CONST., ART. I, SECT. 16 AND U.S. CONST., AMEND. XIV) AND NOTICE OF THE CHARGE (U.S. CONST., AMEND. VI), AND WAS IMPROPERLY CONVICTED OF A CRIME WITHOUT INDICTMENT BY A GRAND JURY (OHIO CONST., ART. I, SECT. 10).
Initially, we note that there was no objection to the wording of the rape indictment raised at trial or challenged prior thereto. Consequently, defendant's failure to timely object to the allegedly defective indictment constitutes a waiver of the issues. State v.Biros (1997), 78 Ohio St.3d 426, 436. Under Crim.R. 12(B) and (G), alleged defects in an indictment must be asserted before trial or they are waived. State v. Mills (1992), 62 Ohio St.3d 357, 363. We therefore proceed to review under the plain error analysis.
The defendant argues that the indictment was defective because it omitted reference to when "the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age." However, we find the indictment was not defective as it sufficiently put defendant on notice of the crime he was indicted on.
We find all of the essential elements of rape were charged in the indictment. Defendant was on notice that the Grand Jury found that defendant "unlawfully engaged in sexual conduct with Naysa Sargent, not his spouse, knowingly [sic] or having reasonable cause to believe that [her] ability to resist or consent was substantially impaired because of [a] physical condition."
The record and the videotape reveal that the victim was a frail fourteen-year-old girl suffering from a very serious physical disability. This disability had a profound effect on her ability to resist or consent. Defendant knew that this physical condition substantially impaired her ability to resist or consent. In his statement to police, he acknowledged her age as being fourteen and that he felt sorry for "the little girl — she is retarded and has a trach."
In State v. Pittman (Nov. 16, 1995), Cuyahoga App. No. 68163, unreported, relied on by defendant, the indictment failed to state any overt act committed in furtherance of the conspiracy alleged as R.C. 2923.01 mandates. The indictment was deficient on its face. Trial counsel did not object to the deficient indictment. By applying a plain-error analysis under Crim.R. 52(B), this Court found the indictment deficient on its face and any conviction obtained thereunder was void. That decision has no application here. In the instant case, the indictment clearly and accurately outlined the essential elements that constituted the offense of rape under R.C. 2907.02 and defendant was clearly on notice of the elements of the crime. There was no risk that the Grand Jury did not indict the defendant on the essential facts on which the defendant was ultimately convicted.
Assignment of Error I is overruled.
 II. MR. GRIDER'S RIGHTS UNDER ART. I, SECT. 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED AND HE WAS IMPROPERLY DENIED A CRIM.R. 29 ACQUITTAL ON RAPE BECAUSE THERE WAS NO EVIDENCE OF SEXUAL CONDUCT AND THE TESTIMONY OF FAMILY THAT THE ALLEGED VICTIM OF A RAPE HAD CEREBRAL PALSY IS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT THE PHYSICAL CONDITION OF THAT PARTICULAR PERSON WITH CEREBRAL PALSY SUBSTANTIALLY IMPAIRED HER ABILITY TO RESIST OR CONSENT, AND/OR THAT MR. GRIDER KNEW OR HAD REASONABLE CAUSE TO BELIEVE THAT THE ALLEGED VICTIM'S ABILITY TO RESIST OR CONSENT IS SUBSTANTIALLY IMPAIRED BECAUSE OF A PHYSICAL CONDITION.
The standard of review we must observe in passing on sufficiency of the evidence was set forth by the Supreme Court of Ohio as follows in State v. Thompkins (1997), 78 Ohio St.3d 380,386-87:
 The state asserts that sufficiency of the evidence and weight of the evidence are synonymous legal concepts. They are not. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict, is a question of law. State v. Robinson (1955), 162 Ohio S.Ct. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida
(1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
Defendant argues that there was insufficient evidence of sexual conduct or a physical impairment affecting the victim in this case requiring an acquittal under Crim.R. 29(A). Defendant claims that no one testified that he penetrated the victim. However, the record reflects that the victim herself testified that defendant had "sexual intercourse" with her. This, of course, infers penetration. Medical evidence also showed a reddened vaginal area and bruises about her body. The victim acted out the sexual intercourse by means of anatomically correct dolls. She told the doctor and family members that defendant hurt her vagina.
The evidence also was clearly sufficient to show that a physical condition substantially impaired the victim's ability to resist or consent in this case. Defendant himself believed the girl was "retarded" and saw she had a "trach" which would impair her ability to communicate. All of this evidence was sufficient to support a submission to the jury on whether or not the offense of rape was committed.
Assignment of Error II is overruled.
 III. WHEN MR. GRIDER WAS CONVICTED OF RAPE AND KIDNAPPING, THE CONVICTION FOR KIDNAPPING IS IN VIOLATION OF R.C. 2941.25
(ALLIED OFFENSES) AND A DENIAL OF MR. GRIDER'S RIGHTS TO PROTECTION FROM DOUBLE JEOPARDY GUARANTEED BY ART. I, SECT. 10
OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
Defendant contends the crimes of kidnapping and rape are allied offenses of similar import. Absent plain error, defendant's failure to raise the issue of allied offenses of similar import at the time of his conviction or sentencing constitutes a waiver of the claimed error on appeal. State v. Houser (May 30, 1996), Cuyahoga App. No. 69639, unreported.
R.C. 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of similar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In Newark v. Vazirani (1990), 48 Ohio St.3d 81, syllabus, the Supreme Court of Ohio held:
 Under R.C. 2941.25, a two-tiered test must be undertaken to determine whether two or more crimes are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
If two offenses are allied offenses of similar import, both may be submitted to the jury, but the defendant may only be convicted of one of the two offenses. State v. Goff (1998),82 Ohio St.3d 123, 135.
State v. Logan (1979), 60 Ohio St.2d 126 established the test to be applied when determining if kidnapping and another crime are allied offenses of similar import. Logan held:
 In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:
 (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions;
 (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.
The factors to be taken into account in determining if the first prong of the Logan test has been met include: the length of restraint; location of restraint; distance of asportation; and the amount of force used and injuries caused by the restraint. Statev. Brown (1984), 12 Ohio St.3d 147, 151; State v. Henry (1987),37 Ohio App.3d 3, 9; State v. Harris (Sept. 29, 1994), Cuyahoga App. No. 65681, unreported. The Court in State v. Logan, supra, found that the "asportation of the victim down the alley to the place of the rape," did not constitute a separate animus from the rape itself. Likewise, in State v. Price (1979), 60 Ohio St.2d 136,143, the Court held that the defendant's forcefully removing the victim from a car and taking her to a nearby bush where he raped her did not constitute a separate animus. Cf. State v. Ware
(1980), 63 Ohio St.2d 84, 87 (moving victim from downstairs to upstairs for purpose of rape would in and of itself not be enough to constitute a separate animus, except that the act of the asportation was by deception.)
A review of the record before us indicates that although the defendant walked with the victim to her home, he did not force himself upon her until they reached the home where he forcefully kissed and then followed the victim into the home where he forced her into a back bedroom and raped her. These facts do not indicate that the purpose of the abduction of the victim was for any other purpose than the rape itself. Therefore, we find that the defendant did not commit the crime of kidnapping with an animus separate from the rape.
We also do not find that the second prong of the Logan test has been met. That is, the victim was not subjected to a substantial increase of harm by being compelled to enter her own home where various relatives were sleeping. Although the victim had a trach tube there was no evidence that she was put at further risk because of this disability.
Defendant's Assignment of Error III is sustained and the defendant's conviction as to the kidnapping charge will be reversed and vacated.
 IV. THE ADMISSION OF THE DETECTIVE'S EXPERT TESTIMONY THAT THE ALLEGED VICTIM'S STORY WAS CREDIBLE ACTED AS A LITMUS TEST OF THE KEY ISSUE IN THE CASE, INFRINGED UPON THE ROLE OF THE FACT FINDER AND IS PREJUDICIAL, REVERSIBLE ERROR.
On cross-examination, defense counsel asked the detective, Essie Howard, to admit that there was no physical evidence of rape. The specific exchange was as follows:
 Q. There was never really any clear evidence that that happened, was there?
A. Clear evidence of rape?
Q. Yes.
(Tr. at 211)
The examination was not limited to "physical" evidence. By this question, defense counsel invited the witness to comment on all the evidence she had in evaluating whether or not a rape had occurred, including any disclosures by a disabled victim. These facts clearly do not fall with the prohibition of State v. Boston
(1989), 46 Ohio St.3d 108, cited by defendant. Boston prohibits an expert's opinion of the veracity of a child declarant's statement in the State's case-in-chief. Such an opinion invades the province of the jury as the fact finder. However, in the instant case, the door was opened on cross-examination to elicit the detective's opinion on the sufficiency of the evidence in the case.
In any event, there was no jury in this case and the trial court clearly was able to separate fact from opinion when he interrupted the proceeding to allow an objection to be sustained.State v. Richey (1992), 64 Ohio St.3d 353, 357-358. We find no prejudicial error here.
Assignment of Error IV is overruled.
 V. MR. GRIDER WAS PREJUDICED WHEN THE PROSECUTION PLAYED, AND THE COURT ADMITTED, A VIDEOTAPE OF AN INTERVIEW WITH THE ALLEGED VICTIM IN WHICH IRRELEVANT, PREJUDICIAL UNSWORN STATEMENTS, INCLUDING INADMISSIBLE HEARSAY AND STATEMENTS IN RESPONSE TO PERSISTENT AND BLATANT LEADING QUESTIONS, WERE ADMITTED IN VIOLATION OF EVID.R. 402, 403, 604 AND 802 AND HIS RIGHTS UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.
Defendant argues that the trial court erred in permitting the admission of a videotape on which the interview by the social worker with the victim was taped. Defendant argues that the tape contained inadmissible hearsay by the daughter, mother, detective, social worker and sign language interpreter. We note that this tape was played at trial and admitted into evidence without objection. Therefore, excluding plain error, any objection to this tape and its contents was waived. We find no plain error in its admission.
 Evid.R. 803(4) allows into evidence, as an exception to the hearsay rule, "statements made for purposes of medical diagnosis or treatment and describing medical history, or part or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
State v. Dever (1992), 64 Ohio St.3d 401, 407; Evid.R. 803(4). Furthermore, the Dever court held "that a trial court does not abuse its discretion when it admits a child declarant's statements made for the purpose of medical diagnosis or treatment pursuant to Evid.R. 803(4) * * *. Once the statements are admitted, their credibility is a matter to be evaluated by the factfinder." Id. at 412.
This Court has consistently held that a young rape victim's statements to social workers, clinical therapists and other medical personnel are admissible under Evid.R. 803(4). State v. Shepherd
(July 1, 1993), Cuyahoga App. No. 62894, unreported; State v. Duke (Aug. 25, 1988), Cuyahoga App. No. 52604, unreported, citing State v.v. Cottrell (Feb. 19, 1987), Cuyahoga App. No. 51576, unreported;State v. Negolfka (Nov. 19, 1987), Cuyahoga App. No. 52905.
As to the comments made by the mother, detective and interpreter, we note that the normal presumption in a bench trial applies. In a bench trial, absent apparent evidence to the contrary, the trial court is presumed to have considered only the relevant material and competent evidence in arriving at its judgment. State v. Richey (1992), 64 Ohio St.3d 353, 357-358.
Assignment of Error V is overruled.
 VI. MR. GRIDER WAS PREJUDICED BY THE ADMISSION OF HEARSAY TESTIMONY IN VIOLATION OF EVID.R. 802 AND MR. GRIDER'S RIGHTS UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.
Defendant contends that the trial court erred in admitting the hearsay statements of the detective in which she testified that a neighbor had told her that he saw the defendant hold the victim up against the side of the house and kiss her. He also argues that the trial court should not have permitted the mother, aunt and uncle to testify to what the victim told them immediately after the incident. These arguments have no merit.
As stated in the previous assignment of error, this was a bench trial and therefore we presume that the trial court only considered relevant, material and competent evidence. State v.Richey, supra.
Further, the detective's testimony to what the neighbor told her was admissible as the victim's father testified to what the neighbor told him on cross examination. Defendant cannot complain regarding the admission of evidence that he invited by "opening the door." State v. Barnett (1990), 67 Ohio App.3d 760, 769; State v.Woodruff (1983), 10 Ohio App.3d 326, 327.
The mother's, aunt's and uncle's testimony as to what the victim told them occurred was admissible under the excited utterance exception to hearsay. The excited utterance exception allows for the admission of hearsay testimony if (1) the statement relates to a startling event, and (2) the statement is made under the stress of that event. Evid.R. 803(2); State v. Taylor (1993),66 Ohio St.3d 295. In order to be an excited utterance, the declarant must still be under the stress of the event. Id. The trial court has wide discretion in determining whether the declarant was under the stress of the event when the out-of-court statement was made. State v. Fowler (1985), 27 Ohio App.3d 149,151.
In the case herein, the mother testified that although not hysterical, her daughter was "very upset," "excited" and crying in the bathroom when her daughter had told her that "the man hurt me" and pointed to her arm and vagina. The aunt testified that the victim was "upset" and "scared" when she told her about what happened. The uncle stated that the victim was "crying" when she told him what happened and that she was "hysterical." All of these statements were made within minutes, if not moments, of the defendant being discovered with the naked victim and fall well within the excited utterance exception to hearsay.
Assignment of Error VI is overruled.
 VII. WHEN THERE WAS NO SEXUALLY VIOLENT PREDATOR SPECIFICATION AND NO EVIDENCE THAT MR. GRIDER WAS LIKELY TO AGAIN COMMIT A SEXUALLY ORIENTED OFFENSE, THE TRIAL COURT ERRED BY DECLARING THAT MR. GRIDER WAS AUTOMATICALLY A SEXUAL PREDATOR.
Defendant contends that the record does not support the trial court's finding that he is a sexual predator. Under the circumstances, we are compelled to agree.
In the case herein, after hearing arguments by both sides, the trial court stated:
 All right. The Court has heard all of the evidence and finds that the statutory grounds were met here, and the defendant is automatically classified a sexual predator, under 2950.09(A).
(Tr. at 249)
Under R.C. 2950.09(A), a person who is convicted of or pleads guilty to a sexual oriented offense that contains a sexually violent predator specification, is automatically classified as a sexual predator. However, in the case herein, no such specification was included in the indictment, therefore the trial court could not have found that the defendant was "automatically classified as a sexual predator."
Furthermore, based on the evidence presented by the prosecutor, we do not find the defendant to meet the criteria required to be classified as a sexual predator. R.C. 2950.01(E) provides that to be classified as a sexual predator, the person must (1) have "been convicted of or pleaded guilty to committing a sexually oriented offense," and (2) be "likely to engage in the future in one or more sexually oriented offenses." The determination that an offender is a sexual predator must be based on clear and convincing evidence. R.C. 2950.09(B)(3).
The prosecutor stated the following in support of its argument that the defendant is a sexual predator:
 I would like for the Court to consider all of the testimony in this case that you heard over the last two days and incorporate that into this hearing now. Because it is for the Court to determine whether the defendant belongs in one of three classifications of sexual offenders.
 In my view, the evidence supports the Court to find the defendant to be a sexual predator, in that it is very likely that the defendant would strike again, if he gets out of prison, and that he will further victimize other young victims.
 Therefore, we feel the State has met its burden, and the Court should consider this defendant to be a sexual predator.
(Tr. at 248)
Although the evidence at trial established that the defendant's rape of a young, handicapped girl was particularly disturbing, this in and of itself did not show by clear and convincing evidence that the defendant is likely to commit another sexual offense in the future. This was defendant's first sexual offense, with his only prior criminal history consisting of aggravated burglary. On this record, we cannot say that the defendant is a sexual predator.
Assignment of Error VII is sustained and the defendant's sexual predator classification vacated.
 VIII. THE TRIAL COURT FAILED TO COMPLY WITH R.C. 2950.03
WHEN, DURING A SENTENCING AFTER JANUARY 1, 1997, FOR A SEXUALLY ORIENTED OFFENSE, THE COURT INFORMED MR. GRIDER ONLY THAT HE MUST REGISTER, IN PERSON, WITH THE COUNTY SHERIFF IN HIS COUNTY OF RESIDENCE WITHIN SEVEN DAYS OF ENTERING THE COUNTY, AND MUST VERIFY HIS RESIDENCE EVERY NINETY DAYS, AND THE FORM STATED MERELY THAT THE COURT NOTIFIED THE DEFENDANT OF ALL REGISTRATION DUTIES PURSUANT TO R.C. 2950.03, BUT FAILED TO STATE THAT MR. GRIDER MUST PROVIDE NOTICE OF ALL CHANGES IN HIS RESIDENCE ADDRESS AND MUST REGISTER A NEW ADDRESS PURSUANT TO R.C. 2950.05.
Given our disposition of Assignment of Error VII, this assignment of error is moot.
 IX. THE TRIAL COURT ERRED BY IMPOSING THE MAXIMUM SENTENCE WHEN THE RECORD DID NOT AFFIRMATIVELY SUPPORT THE MAXIMUM AND THE TRIAL COURT DID NOT FIND, AND GIVE REASONS FOR FINDING, THAT MR. GRIDER IS A MAJOR DRUG OFFENDER OR A REPEAT VIOLENT OFFENDER OR EITHER COMMITTED THE WORST FORM OF THE OFFENSE OR POSED THE GREATEST LIKELIHOOD FOR COMMITTING FUTURE CRIMES.
In imposing a maximum sentence, the trial court must follow R.C. 2929.14(C) which states:
 The court imposing a sentence upon an offender for a felony may impose the longest term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * *, and upon certain repeat violent offenders * * *.
The Supreme Court in State v. Edmonson (1999), 86 Ohio St.3d 324, recently addressed the principles governing the minimum and maximum sentences. Relevant to the case before us, the Court stated that "in order to lawfully impose the maximum term for a single offense, the record must reflect the court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)." Id. at 329. In so holding, the Court vacated a sentence even though the trial court stated that it found the defendant to be a "dangerous offender and you to commit a crime again [sic]. This was a terrible incident with a person who has [sic] a gun." The trial court in that case had also stated in its journal entry,
 The Court has considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and has balanced the seriousness and recidivism factors under Ohio Revised Code Section 2929.12.
 The Court further finds that [Edmonson] is a dangerous offender, that recidivism is likely, and that a gun was used during this incident.
The Supreme Court concluded that:
 [T]he Edmonson sentencing fails to record that Edmonson fits within one of the categories of offenders in R.C. 2929.14(C). Obviously, without the finding itself, the court also fails to provide the necessary "finding that gives its reasons." R.C. 2929.19(B)(2)(d). With this record, we cannot confirm that the trial court heeded the enacted policy of the General Assembly meant for curtailing the imposition of maximum terms.
Id. at 329.
In the case before us, the trial court, like in Edmonson, did not specifically cite to one of the categories listed in R.C.2929.14(C). The trial court stated that the case was "outrageous and perverse" and that the acts were "heinous" and that it was the court's duty to "protect society." The court than imposed the maximum term on each count. According to Edmonson, the trial court's findings are insufficient to comply with R.C. 2929.14(C). We therefore, vacate the sentencing and remand for re-sentencing. See, also, State v. Gentile (Jan. 6, 2000), Cuyahoga App. No. 75572, unreported.
Assignment of Error IX is sustained.
 X. THE TRIAL COURT ERRED BY ORDERING CONSECUTIVE SENTENCES WHEN IT FAILED TO MAKE FINDINGS THAT STATED A REASON, AS REQUIRED BY R.C. 2929.19(B)(2)(C) AND R.C. 2929.14(E)(3), AND THE CONDITIONS IN R.C. 2929.14(E)(3) DID NOT EXIST.
Defendant argues that the trial court failed to state its reasons for imposing consecutive sentences. We agree with the defendant.
R.C. 2929.14 governs the imposition of prison terms for felony convictions, stating in relevant part:
 (E)(4) If multiple prison terms are imposed upon an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
This Court in State v. Albert (1997), 124 Ohio App.3d 225, 230
found that the trial court must explicitly engage in the analysis set forth in the statute when ordering consecutive sentences:
 R.C. 2929.14 requires the court to make a finding that the consecutive sentences are necessary to protect the public from future crime or to punish the offender and that such consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger posed to the public and that the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses adequately reflects the seriousness of the conduct. Because this was not done in this case, we remand the matter to the trial court for re-sentencing of the appellant and the inclusion of such a finding if the court, in its discretion, decides to impose consecutive sentences in this matter.
See, also, State v. Cardona (Dec. 16, 1999) Cuyahoga App. No. 75556, unreported (according to State v. Edmonson trial court must make a record at the sentencing hearing that confirms trial court adhered to decision-making process required of the statute in imposing consecutive sentences.)
In the case herein, the record does not adequately reflect that the trial court engaged in the above analysis required in imposing consecutive sentences. We therefore remand the matter to the trial court for re-sentencing.
Assignment of Error X is sustained.
 XI. WHEN THE TRIAL COURT INFORMED MR. GRIDER ONLY OF THE PRISON TERM, AND THE JOURNAL ENTRY STATED MERELY THAT THE SENTENCE INCLUDES ALL EXTENSIONS PROVIDED BY LAW, THE TRIAL COURT FAILED TO COMPLY WITH R.C. 2929.19, WHICH REQUIRES THAT AT SENTENCING FOR AN OFFENSE THAT OCCURRED ON OR AFTER JULY 1, 1996, THE TRIAL COURT SHALL NOTIFY THE OFFENDER OF SPECIFIC FACTS CONCERNING A MANDATORY PERIOD OF POST-RELEASE CONTROL (R.C. 2967.28) AND THE POSSIBILITY OF AN INCREASE IN THE PRISON TERM (R.C. 2967.11)
The State concedes that the trial court failed to advise the defendant of the bad-time provision of Ohio Law and that he would be subject to post-release supervision after release from prison. Defendant cites R.C. 2929.19(F)(5))(c). There is no such section under R.C. 2929.19. The proper, applicable section is R.C.2929.19(B)(3)(b)(d) and (e). Pursuant to our recent authorities, this case will be remanded for resentencing so that defendant may be properly advised of the bad-time and post-release controls.State v. Hayley (Dec. 2, 1999), Cuyahoga App. No. 74718, unreported; State v. Davis (June 18, 1998), Cuyahoga App. No. 72820, unreported.
Assignment of Error XI is sustained.
 XII. MR. GRIDER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ART. I, SECT. 10 OF THE OHIO CONSTITUTION AND THE 6TH AND 14TH
AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN COUNSEL FAILED TO OBJECT TO PREJUDICIAL ERROR.
Defendant argues that his counsel was ineffective for failing to object to the errors asserted in the above assignments of error.
Trial counsel in this case aggressively cross-examined the victim and other State's witnesses. In Strickland v. Washington
(1984), 466 U.S. 668, the Supreme Court specified what must be shown to prove unconstitutional ineffectiveness of counsel.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. Id. at 687.
 Additionally, "* * * a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.'" Strickland, supra, at 689. See, also, State v. Clayton (1980), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d, vacated in part on other grounds (1978), 438 U.S. 910.
In the instant case, defense counsel vigorously cross-examined the alleged victim and other State witnesses. In light of these circumstances, the errors alleged by defendant that were not objected to were neither so serious that his counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, nor so serious that the result of his trial was rendered unreliable.
The Ohio Supreme Court dealt with a similar issue involving after-the-fact allegations of incompetence in failing to object when it decided State v. Lockett (1976), 49 Ohio St.2d 48. The court dealt with the issue squarely, reasoning that the mere failure to make objections which seem appropriate after the fact does not establish reversible error. In paragraph 9 of its syllabus, the Lockett court held:
 Where the record indicates that defense counsel performed conscientiously, and, at least as well as a lawyer with ordinary training and skill in the criminal law, and investigated and asserted all the apparently substantial defenses that were available to a defendant, mere failure to make objections which seem appropriate after the fact does not establish prejudicial error as a deprivation of the Sixth Amendment right to counsel.
There was no doubt that defendant was the perpetrator of these horrible crimes. From our review of the record, counsel did all that he could reasonably do to ensure a fair trial.
Assignment of Error XI is overruled.
Judgment affirmed in part and reversed and vacated in part; sexual predator classification vacated; remanded for resentencing.
It is ordered that appellee and appellant shall each pay their respective costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ROCCO, J., CONCURS. O'DONNELL, P.J., DISSENTS. (SEEDISSENTING OPINION ATTACHED.
 __________________________________ JAMES M. PORTER, JUDGE
 DISSENTING OPINION