The STATE of Ohio, Appellee,

v.

BARNETT, Appellant.

[Cite as *State v. Barnett* (1990), 67 Ohio App.3d 760.]

Court of Appeals of Ohio,
Scioto County.

No. CA1791.

Decided May 24, 1990.

762

*Lynn Alan Grimshaw,* Prosecuting Attorney, and *R. Randolph Rumble,* for appellee.

*Charles A. McCrae,* for appellant.

HARSHA, Judge.

This is an appeal from a judgment of conviction and sentence entered upon a jury verdict by the Scioto County Court of Common Pleas finding Jimmie Lee Barnett, defendant-appellant, guilty of aggravated robbery in violation of R.C. 2911.01(A)(1), an aggravated felony of the first degree, with a firearm specification pursuant to R.C. 2929.71(A).

Appellant assigns the following errors:

"I.   The trial court erred in overruling the defendant's motion to suppress the prior identification evidence of defendant and the in court identification of defendant.

"II.   The trial court erred in overruling the defendant's motion to suppress the recorded statements.

"III.   The trial court erred in overruling the defendant's motion *in limine.*

"IV. The trial court erroneously refused to sustain the defendant's motion, made during trial, for a judgment of acquittal, respecting the gun specification.

"V. Defendant's right to a fair trial was substantially prejudiced by the continued reference, during the trial, to the prior identification evidence and to recorded statements."

On October 4, 1988, the Scioto County grand jury returned an indictment which alleged that on or about July 25, 1988, appellant had committed aggravated robbery and that he had a firearm on or about his person or under his control while committing the offense. Appellant subsequently entered a plea of not guilty to the charges in the indictment.

On November 8, 1988, appellant filed a motion to suppress any and all photographs and identification testimony as well as any statements made by appellant to Paul Callihan while in jail. Appellant further filed a motion *in limine* to preclude appellee from referring to such evidence during trial. On November 23, 1988, a hearing was held on appellant's motion to suppress and motion *in limine* at which the following pertinent evidence was adduced.

Janice Crace [1] testified that on July 25, 1988, she was working at Sac's Carry–Out in Portsmouth, Ohio when a robbery occurred. Immediately after the robbery, she hit an alarm button and the police arrived at the scene soon thereafter. She gave the police a description of the person who had committed the robbery and told police at that time that she knew the person who had robbed the store but could not remember his name. When she was taken to the police station, she was reminded of the robber's first name by her boss, whom she had called in order to find out the amount of money stolen so that she could fill out a police report concerning the incident. Subsequently, a policeman threw down one photograph of appellant on the table at which she was sitting. She picked up the photograph and said "this is it." Crace further testified that on the following day, a police officer came to her residence and asked her to look at five photographs and to identify which, if any, of the photographs depicted the person who had robbed the store. Crace picked out a photograph of appellant from this array although this photograph was not the same as the one shown to her the day before at the police station.

Darrell L. Carter, a patrolman for the Portsmouth Police Department, testified that on July 25, 1988, he, Police Officer Benjamin Fugitt, and Crace were present at the police station, that he listened to a discussion between Fugitt and Crace, that based upon such discussion he formed a belief as to

---

1. Both appellate briefs refer to Ms. Crace as "Janet"; however, the bulk of the original papers herein refer to her as "Janice."

who was the robber, and that he placed a photograph of appellant on the table at which Fugitt and Crace were sitting and left the room. Sergeant Robert Pratt of the Portsmouth Police Department testified that on July 26, 1988, he brought five photographs, including one of appellant, to Crace's residence to see if she could identify the person that had robbed Sac's Carry–Out. Sgt. Pratt further testified that when appellant had been arrested for the offense herein, he gave appellant the required *Miranda* warnings and appellant said that he wanted a lawyer present before he made a statement. According to Sgt. Pratt, at some time later in the investigation, he was approached by an inmate named Paul Callihan who led him to believe that he could be of some help to him in connection with the investigation. Sgt. Pratt put a wire on Callihan and when he went back to jail, he was to elicit certain statements from appellant under Sgt. Pratt's suggestion. A tape was made of these statements. Appellee's counsel stated that the tape would only be used for purposes of rebuttal. At the conclusion of the hearing, the trial court overruled appellant's motion to suppress and motion *in limine.*

On December 1, 1988, immediately prior to a jury trial, appellant again moved to suppress Crace's identification testimony and further moved to dismiss the firearm specification pursuant to *State v. Gaines* (Jan. 20, 1988), Scioto App. No. CA1629, unreported, 1988 WL 4395, affirmed (1989), 46 Ohio St.3d 65, 545 N.E.2d 68. Both motions were overruled by the trial court, whereupon the following evidence was presented.

Crace testified that on the night of July 25, 1988, she and Fred Adams were the only people working at Sac's Carry–Out, that at a few minutes before 10:00 P.M., a person wearing a mask pulled out a handgun and told her to put money in a bag, that this person pointed the gun at Adams and told him to get up against the wall, and that the person fled with over $330 in cash and food stamps. Crace further testified that she did not know much about guns but she thought it was in working order. According to Crace, at the time she called the police, she knew that appellant was the robber because he was a regular customer, she had observed appellant at least two to three times a day from February 1988 until the July 25, 1988 robbery, she had seen him on two previous occasions on the date of the robbery, and she had seen him in her neighborhood. On direct examination, Crace noted that on July 26, 1988, she had picked appellant's photograph as that of the robber from among five photographs that she was shown by Sgt. Pratt and she further made an in-court identification of appellant as the robber. On cross-examination, Crace further testified that on July 25, 1988, when she was taken to the police station, she was shown one photograph of appellant.

Adams testified that at the time of the robbery, the gun held by the robber looked like a small caliber automatic pistol and that from what he observed, there was nothing wrong with the gun. Adams further testified that following the robbery, he had three weeks of firearms training, that he was "somewhat familiar" with handguns, and that it was his opinion that the gun used by the robber was a firearm.

Sgt. Pratt reiterated his suppression hearing testimony to the effect that Crace, on July 26, 1988, identified the photograph of appellant as the perpetrator of the crime out of the five pictures shown. He further testified that on the July 25, 1988 police report, Patrolman Fugitt wrote that Crace had told him that the robber was a "regular customer" but she "could not think of his name."

Callihan testified that he talked to appellant when they were both in jail in August 1988, that during these conversations, appellant told him that he was working for Cutlip's Used Cars when Gary Cutlip approached him about robbing Sac's Carry–Out, that appellant robbed the store, that appellant had a .22 Beretta nine-shot pistol with him during the robbery, and that appellant had nine shells in the gun but was not sure if one was in the chamber. Callihan further testified that appellant never told him whether or not the gun worked. At the close of appellee's case, appellant moved to dismiss the firearm specification on the basis that there had been no proof of operability, and the trial court overruled the motion.

Appellant testified that he was in Kentucky at the time of the robbery and that he had only talked to Callihan while he was in jail because he was afraid of him. At the close of appellant's case, the trial court overruled an objection to the admission into evidence of a taped conversation between appellant and Callihan made on September 7, 1988.

On rebuttal, appellant proceeded to have Sgt. Pratt and Callihan testify as to Sgt. Pratt placing a wire on Callihan on September 7, 1988. Sgt. Pratt testified that there had been a warrant out for appellant's arrest in connection with the robbery either on July 26, 1988 or a day or two thereafter. During Callihan's rebuttal testimony, the trial court decided to sustain appellant's earlier objection to the playing of the taped conversation.

Following closing arguments, appellant moved for a mistrial or, in the alternative, a new trial on the basis that appellee had failed to produce the Polaroid photograph of appellant which was utilized by Crace to make her initial photographic identification of appellant and, further, that the foundation evidence presented by appellee following the trial court's initial rulings on admissibility of the taped conversation between appellant and Callihan denied him the right to a fair trial. The trial court overruled the motion and the jury

subsequently returned a verdict finding appellant guilty of aggravated robbery and the firearm specification as stated in the indictment. On December 12, 1988, the trial court entered a judgment which reflected the jury verdict, and on December 15, 1988, the trial court sentenced appellant to an indefinite term of imprisonment of ten to twenty-five years on the aggravated robbery charge and a term of three years of actual incarceration on the firearm specification, with the latter term to be served consecutively with and prior to the indefinite sentence.

■ Appellant's first assignment of error asserts that the trial court erred in overruling his motion to suppress both the prior out-of-court identification and the in-court identification of appellant. Appellant first argues that the *initial* photographic identification of appellant by the store clerk, Janice Crace, which consisted of her being shown only one photograph of appellant, was so impermissibly suggestive as to result in a very substantial likelihood of misidentification originally. Thus, the out-of-court identification should have been suppressed.

Appellant further argues that the in-court identification should have been excluded because the prior unduly suggestive procedure resulted in a very substantial likelihood of subsequent irreparable misidentification. In other words, the prior suggestive procedure (out-of-court identification) so tainted the witness's perception that the in-court identification was inherently unreliable.

■ We turn first to the question of the admissibility of the out-of-court identification. Before the out-of-court identification testimony is suppressed, the trial court must find that the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *State v. Hill* (1987), 37 Ohio App.3d 10, 14, 523 N.E.2d 885, 888; *State v. Blackwell* (1984), 16 Ohio App.3d 100, 16 OBR 106, 474 N.E.2d 671. Moreover, although the identification procedure may have contained notable flaws, this factor does not, *per se*, preclude the admissibility of the identification. *State v. Merrill* (1984), 22 Ohio App.3d 119, 121, 22 OBR 320, 322, 489 N.E.2d 1057, 1060; *State v. Moody* (1978), 55 Ohio St.2d 64, 67, 9 O.O.3d 71, 72, 377 N.E.2d 1008, 1010. Reliability is the linchpin in determining the admissibility of identification testimony, with factors affecting reliability including the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Merrill, supra,* at 121–122, 22 OBR at 322–323, 489 N.E.2d at 1060–1061; *Hill, supra,* 37 Ohio App.3d at 14, 523 N.E.2d at 888; *Neil v. Biggers* (1972),

409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411. Therefore, although the identification procedure is suggestive, so long as the challenged identification itself is reliable, it is admissible. *Manson v. Brathwaite* (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140; *Moody, supra.*

■ Where a suspect has been confronted by a witness before trial, that witness's identification of the suspect will be suppressed if the confrontation procedure was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances. *State v. Brown* (1988), 38 Ohio St.3d 305, 310, 528 N.E.2d 523, 532. The required inquiry is therefore two-pronged, with the first question to be asked being whether the initial identification procedure was unnecessarily or unduly suggestive. 1 LaFave & Israel, Criminal Procedure (1984) 581, Section 7.4. The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup or a photographic array, has been widely condemned. *Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; *People v. Ward* (Ill.App.1978), 63 Ill.App.3d 864, 20 Ill.Dec. 674, 380 N.E.2d 883. It appears manifest in the case at bar that the showing of the single photograph of appellant to the witness by Patrolman Carter was unnecessarily suggestive.

However, as noted previously, merely because a specific procedure is unnecessarily suggestive does not *per se* render the challenged identification inadmissible. *Manson, supra; Moody, supra; Merrill, supra.* Rather, the focus then shifts to reliability, *i.e.,* whether the out-of-court suggestive procedure created a *very substantial* likelihood of *misidentification. Simmons v. United States* (1968), 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.

Despite the language of the holding in *Stovall, supra,* courts have been reluctant to hold that a showup or presentation of a single photograph of the defendant to a witness violates due process when the confrontation is accidental, when some sort of emergency exists, when the suspect is unknown or at large, or when *external factors* "prove" the accuracy of the identification. 1 LaFave & Israel, *supra,* at 590–591, Section 7.4(f). One of the strongest of these external factors which may be used to prove the accuracy of the identification is the situation where the witness already knew the perpetrator before the crime was committed. *Ward, supra,* 63 Ill.App.3d at 869, 20 Ill.Dec. at 678, 380 N.E.2d at 887; *United States v. Anderson* (D.C.1974), 490 F.2d 785, 787; see, also, *State v. Jones* (Mo.App.1982), 643 S.W.2d 34; *State v. Denny* (N.D.1984), 351 N.W.2d 102; *State v. Welch* (1983), 65 N.C.App. 390, 308 S.E.2d 910; *Commonwealth v. Buehl* (1986), 510 Pa. 363, 508 A.2d 1167; *State v. Findlay* (1986), 198 Conn. 328, 502 A.2d 921; *Wicks v. Lockhart* (E.D.Ark.1983), 569 F.Supp. 549.

In evaluating the totality of the circumstances, there was sufficient evidence adduced at both the suppression hearing and the trial, so that the trial court could properly determine that the pretrial identification was not even remotely likely to create a likelihood of misidentification. Indeed, Crace testified that she had known that the perpetrator of the crime was appellant, that she knew his first name prior to the one-man showup by Patrolman Carter, that appellant had been a regular customer at the store, that she had seen him on the average of two to three times a day for over five months at the store and in her neighborhood, and further, that she had seen him twice the day of the robbery. Additionally, we note that any evidence with respect to the initial photographic identification was first introduced at trial by appellant with his cross-examination of Crace and, therefore, any error with regard to this introduction was arguably invited by appellant. See, e.g., *Center Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St.3d 310, 313, 31 OBR 587, 589, 511 N.E.2d 106, 108, wherein the Supreme Court of Ohio noted that under the "invited error" doctrine, a party would not be permitted to take advantage of an error which he himself invited or induced the trial court to make. See, also, *State v. Woodruff* (1983), 10 Ohio App.3d 326, 10 OBR 532, 462 N.E.2d 457.

We now turn to the question of whether or not the trial court should have admitted Crace's in-court identification of the appellant. We note initially that the standard used in this analysis is almost identical to that used above.[2]

Having determined in our initial analysis that, while the procedure used was unnecessarily suggestive, the reliability prong under *Manson, supra,* was satisfied by the witness's prior familiarity with the perpetrator, we hold that the in-court identification testimony was properly admitted. Here, there was such a strong showing of reliability that it cannot be said that the suggestive procedure created a very substantial likelihood of irreparable misidentification. Given the witness's prior knowledge of appellant, the likelihood of misidentification was almost nil.

Accordingly, in that there was sufficient reliability for each of the challenged identifications when considering the totality of the circumstances,[3] appellant's first assignment of error is overruled.

---

**2.** 1 LaFave & Israel, *supra,* at 581, Section 7.4.

**3.** By so holding, we do not condone the procedure utilized by Patrolman Carter in showing the single photograph of appellant to Crace nor do we condone the apparently mistake-riddled procedure of the police department in losing the aforementioned photograph so that it was not available at either the suppression hearing or the jury trial. The holding of this

■ Appellant's second assignment of error asserts that the trial court erred in overruling his motion to suppress the recorded statements. Appellant argues that the trial court erred in overruling his suppression motion with respect to the September 7, 1988 recorded conversation between appellant and fellow inmate Paul Callihan in that the holding in *United States v. Henry* (1980), 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115, required suppression.

■ The Sixth Amendment right to counsel attaches at the initiation of adversary judicial criminal proceedings, whether by formal charge, preliminary hearing, indictment, information, or arraignment. *State v. Lee* (Nov. 23, 1985), Gallia App. No. 83CA17, unreported; *Kirby v. Illinois* (1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411. Once the right to counsel has attached, the defendant's own incriminating statements elicited surreptitiously by the police without counsel present may not constitutionally be used by the prosecution as evidence against him at his trial. *Lee, supra,* at 28; *Massiah v. United States* (1964), 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. In the case at bar, appellant's right to counsel had attached prior to his September 7, 1988 taped conversation with Callihan even though an indictment had not been returned as of that date since a criminal complaint, as well as an arrest warrant, had already been issued. *Kirby, supra.*

In *Henry, supra,* the Supreme Court of the United States held that the defendant's incriminating statements made to an informant were not admissible at the defendant's trial, the government having violated the defendant's Sixth Amendment right to counsel by intentionally creating a situation likely to induce the defendant to make incriminating statements without the assistance of counsel and having deliberately elicited the incriminating statements. The *Henry* court noted, *supra,* 447 U.S. at 270, 100 S.Ct. at 2186, 65 L.Ed.2d at 122, three factors in support of its holding: (1) A paid informant for the government acted under instructions from the government; (2) the informant was a fellow inmate of Henry; and (3) Henry was in custody and under indictment at the time he was engaged in conversation by the informant.

Appellee cites *United States v. Taylor* (C.A.10, 1986), 800 F.2d 1012, and *Lightbourne v. Dugger* (C.A.11, 1987), 829 F.2d 1012, in support of its proposition that *Henry* is distinguishable because, herein, the police never initiated contact with Callihan, there was no cooperative agreement between Callihan and the police, no compensation was ever discussed or paid, and no benefit of any kind accrued to Callihan for his cooperation. In *Lightbourne, supra,* the Eleventh Circuit Court of Appeals held that a cellmate was not a

---

case is limited to the unique facts herein, and, in most cases, the law enforcement procedures utilized in the case at bar would constitute reversible error.

government agent where the police did not initiate contact with him, did not encourage eliciting of statements from the defendant, and did not promise or suggest any compensation. Conversely, in the case at bar, Sgt. Pratt explicitly testified that the purpose of wiring Callihan was to encourage the eliciting of statements from appellant. Moreover, the holding in *Taylor, supra,* to the effect that a person placed in a cell with a defendant was not a government agent where the government had not made a definite promise of benefits in exchange for information, has been labeled as "questionable" by at least one treatise. 1 LaFave & Israel, Criminal Procedure (1989 Supp.) 72, Section 6.4. A knowing exploitation by the state of an opportunity to confront the accused without counsel being present is as much a breach of the state's obligation not to circumvent the right to assistance of counsel as is the intentional creation of such an opportunity. *Maine v. Moulton* (1985), 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481, 496.

In considering the evidence adduced herein, and particularly the testimony of Sgt. Pratt, we are persuaded that the wiring of Callihan to record a conversation between himself and appellant on September 7, 1988 violated appellant's Sixth Amendment right to counsel, and, therefore, the trial court erred in failing to earlier grant appellant's motion to suppress that recorded statement. However, this error was not prejudicial in that the trial court eventually suppressed the recorded statement during the jury trial and the statement was never introduced into evidence. Moreover, the error was also not prejudicial where the substance of unrecorded conversations between Callihan and appellant during August 1988 was properly introduced into evidence since Callihan did not, at that time, have any "relationship" whatsoever with appellee. Appellant's second assignment of error is overruled.

Appellant's third assignment of error asserts that the trial court erred in overruling his motion *in limine* to preclude appellee from commenting on Crace's identification testimony and appellant's September 7, 1988 recorded statement to Callihan.

An order granting or denying a motion *in limine* is a tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated, and an appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during trial. *State v. Grubb* (1986), 28 Ohio St.3d 199, 203, 28 OBR 285, 289, 503 N.E.2d 142, 146; *Brown, supra,* at paragraph three of the syllabus. Assuming, *arguendo,* that appellant interposed the proper objections at all the appropriate times during the jury trial to such testimony, there was no error in permitting testimony regarding Crace's pretrial and in

court identifications of appellant for the reasons set forth in our disposition of appellant's first assignment of error.

Moreover, with respect to the admission of foundation evidence regarding the wiring of Callihan on September 7, 1988, appellant never moved to strike such testimony following the trial court's ultimate ruling to suppress the taped statement. More important, as discussed in our disposition of appellant's second assignment of error, in view of Callihan's testimony regarding his prior unrecorded conversations with appellant, any error was non-prejudicial. Appellant's third assignment of error is overruled.

█ Appellant's fourth assignment of error asserts that the trial court erroneously failed to sustain his motion for a judgment of acquittal with respect to the gun specification. In his appellate brief, appellant states that "[a]t the close of his case in chief, defendant renewed his motion for a directed judgment of acquittal and the same was denied" and that the "issues herein * * * were properly preserved for appeal." However, contrary to appellant's assertions, the record fails to disclose a renewal of his Crim.R. 29(A) motion for judgment of acquittal either at the conclusion of his case or at the conclusion of all the evidence. See *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464, where the Supreme Court of Ohio held at paragraph one of the syllabus that when a motion for a directed verdict is made by a defendant at the conclusion of the plaintiff's case and is overruled, the defendant's right to rely on the denial of that original motion as error is not waived when the defendant proceeds to present his evidence and defense, as long as the motion is renewed at the conclusion of all the evidence. While *Helmick* deals with a motion for a directed verdict under Civ.R. 50(A)(2), the rationale supporting the Supreme Court's holding is equally applicable to motions for judgments of acquittal under Crim.R. 29(A). Arguably, *Helmick* overrules, by implication, *State v. Whitmeyer* (1984), 20 Ohio App.3d 279, 20 OBR 370, 485 N.E.2d 1055, wherein it was held that any error made in overruling a motion for acquittal at the close of the state's case is waived if the defense presents evidence on its own behalf. Since the record fails to indicate that appellant renewed his motion after presenting his defense, the waiver doctrine is applicable.

█ Furthermore, assuming *arguendo* that this issue was properly before us, we are persuaded that the jury was presented with sufficient evidence of the firearm's operability to support the firearm specification conviction. R.C. 2923.11(B) and 2929.71(A) require that, prior to the imposition of an additional term of three years' actual incarceration for possession of a firearm during the commission of a felony, the state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at

the time of the offense. *State v. Gaines* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68, syllabus.

In *Gaines, supra,* at 69, 545 N.E.2d at 71–72, the Supreme Court of Ohio noted, in pertinent part, as follows:

"Admission into evidence of the firearm allegedly employed in the crime is not necessary to establish the specification. Rather, the fact may be established by circumstantial evidence (testimony as to gunshots, smell of gunpowder, bullets or bullet holes, etc.). Nevertheless, there must be some evidence relative to the gun's operability. In the present case, there was testimony concerning the appearance of the gun and the witnesses' subjective belief that it was operable. However, these lay witnesses could have drawn the same conclusion from the appearance of a toy gun. Absent any evidence tending to establish that the gun was operable, the firearm specification was not proved beyond a reasonable doubt. The evidence adduced was as consistent with facts insufficient to establish the firearm specification (e.g., a toy gun) as it was with facts sufficient to establish the specification (a firearm). Under such circumstances, the state has failed to satisfy its burden of proof. See *State v. Kulig* (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897."

Pursuant to *Gaines, supra,* it might be argued that the testimony of Crace, a mere lay witness, was insufficient as a matter of law to prove the firearm specification beyond a reasonable doubt. Moreover, it is questionable whether, pursuant to *Gaines,* appellee's argument that Adams's "expert" testimony based on the fact that he was "somewhat familiar" with guns was sufficient to prove operability. The Supreme Court has recently, however, modified *Gaines* and held that proof of operability can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime. *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932, syllabus. Accordingly, appellant's argument herein attacking the lay testimony of Crace and Adams is without merit.

Moreover, the "circumstances surrounding the crime" in the case at bar included Callihan's testimony that appellant later told him that he had used a loaded .22 Beretta nine-shot pistol during the robbery. If believed, this provides direct evidence that the gun was real rather than a toy gun and further leads to the reasonable inference that the gun would not have been loaded unless it was operable. Indeed, appellant seems to concede that Callihan's testimony was sufficient to prove the firearm specification beyond a reasonable doubt when it is stated in his appellate brief that *"[a]bsent the Callihan testimony * * * the Trial Court should have dismissed the gun specification of the indictment."* (Emphasis added.) Appellant contends that

Callihan's testimony was not credible; however, it is the duty of the trier of fact to assess the credibility of witnesses. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23–24, 514 N.E.2d 394, 399–400. We further note that once a jury has reached its decision, an appellate court, in a case where circumstantial evidence is relied upon, will reverse only where the evidence is insufficient as a matter of law to enable the jury to exclude a reasonable hypothesis of innocence. *Apanovitch, supra*, at 28, 514 N.E.2d at 403. Appellant's fourth assignment of error is overruled.

Appellant's fifth assignment of error asserts that his right to a fair trial was substantially prejudiced by the continued reference, during the trial, to the prior identification evidence and to recorded statements. Appellant argues, *inter alia*, that the trial court erred in failing to grant his motion for mistrial or, in the alternative, motion for new trial.

The granting or denying of a motion for mistrial rests within the sound discretion of the trial court. *State v. Stout* (1987), 42 Ohio App.3d 38, 41, 536 N.E.2d 42, 45; *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343. The term "abuse of discretion" connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Apanovitch, supra*, at 22, 514 N.E.2d at 398. For the reasons stated in our disposition of appellant's other assignments of error, the trial court did not abuse its discretion in failing to grant either a mistrial or a new trial by allowing testimony as to Crace's pretrial identification of appellant and foundation testimony as to the September 7, 1988 recorded conversation between Callihan and appellant. Appellant has not shown that he was denied his right to a fair trial. For the foregoing reasons, appellant's fifth assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

HOMER E. ABELE and STEPHENSON, JJ., concur.