JOURNAL ENTRY AND OPINION
Michael Mays appeals from a judgment of the common pleas court entered pursuant to a bench trial finding him guilty of aggravated burglary, aggravated robbery, and two counts of felonious assault. On appeal, Mays contends that the identification procedure employed by the police had been impermissibly suggestive; that the trial court amended the indictment and changed the identify of the crime; that he received ineffective assistance of counsel; and that the state offered insufficient evidence to support his conviction. After careful review, we reject these contentions and affirm the judgment of the trial court.
The record reveals that seventy-five-year-old Mary Ross, lived with her two-year-old grandson, Trayshawn Ross, on the first floor of her home. On the afternoon of April 10, 2000, Ross saw and briefly exchanged words with a man, later identified as Mays, who claimed to be looking for John Bowie, her nephew who lived on the second floor of her home. That evening, Ross surprised Mays, who had entered her home without permission and began looking through drawers in her kitchen, Mays then grabbed Ross and started to beat her on the head with what she described as a handgun, causing her to be hospitalized and requiring one hundred stitches in her head. He also threatened to harm her grandson, Trayshawn. After the beating, Mays stole cash and money orders from Ross valued at $500.
Upon her discharge from the hospital, Detective Peters of the Cleveland Police Department showed Ross an array of six photographs from which she positively identified Mays as the perpetrator, not only from seeing him at the time of the incident but also from seeing him as he visited her nephew in her home on five or six previous occasions. Ross also identified Mays later while looking through a two-way mirror as he spoke to Detective Peters at the police station.
Thereafter, the grand jury indicted Mays on charges of aggravated burglary, aggravated robbery, and two counts of felonious assault, one involving Ross and one involving Trayshawn. Each of these counts included two firearm specifications.
Prior to trial, the defense moved to suppress Ross's identification of Mays as unduly suggestive, which the court considered in conjunction with the trial.
During the bench trial that followed, Ross identified Mays and the trial transcript contains the following colloquy between the prosecutor and Ross:
 PROSECUTOR: Thank you very much. And is that person that you just pointed out the individual that was in your house that day, beating you with the firearm?
ROSS: That's right, and those same eyes, see?
* * *
 PROSECUTOR: And before God and before the court, and is there any doubt in your mind that that's the individual that did this to you and to Trayshawn?
 ROSS: No doubt, none whatsoever. No doubt. I made sure of that. (Tr. 38-39.)
The defense presented a character witness, Leslie Campbell, a social worker who had known Mays for sixteen years. She testified that she had never known him to be violent or to carry a gun. On direct examination by defense counsel, Campbell also revealed her knowledge of his drug addiction and her impression that he appeared to have come off a high on crack cocaine when she saw him on April 10, 2000, the day of Ross's assault.
Mays took the stand on his own behalf and denied having been to Ross's home on April 10, 2000, either in the evening or earlier that day. During his direct examination, he testified that he had visited Bowie who lived on the second floor of Ross's home and smoked crack cocaine there on several occasions. He also admitted that he was coming off a high on crack cocaine on the day of Ross's assault. Mays, however, denied any involvement in the crime against Ross.
The trial court found Mays guilty of aggravated burglary, aggravated robbery, and felonious assault of Ross, but found him not guilty of the firearm specifications as charged in all four counts. The court, when rendering its judgment, stated the following:
 * * * This is a credibility case wherein the Court must determine whether Mrs. Ross has identified her assailant accurately.
 With respect to the identification issue * * * [t]he Court has examined the State's Exhibit 2, the photo array. The defendant's photograph differs from the others in that it is a closer depiction of his face; otherwise, the array can be considered by this Court to be fair.
 The Court has also considered the fact that after Mrs. Ross identified the defendant in the photo array, she was asked to further identify him in person singularly. The latter means of identification of a suspect is strongly disapproved of under the law, and if this means was employed prior to Mrs. Ross's identification of the defendant in the photo array, the Court would suppress the Court identification. However, the Court finds that because Mrs. Ross had already identified the defendant's picture beforehand, the identification process in its totality does not require suppression.
 And the Court would note here that it welcomes a review of this particular finding by a reviewing court.
* * *
 In consideration of the foregoing, the Court finds that the State of Ohio has proven its case with regard to Counts 1, 2, and 3 [i.e., aggravated burglary, aggravated robbery and felonious assault of Ross]. The defendant is guilty of these counts. * * *
 With respect to the gun specifications in the above counts, the Court finds reasonable doubt exists as to the use and/or possession of a firearm because of the previous statements that were given by the victim in the case, and finds, therefore, that the specifications do not apply to the convictions. (Emphasis added.) (Tr. 205-207.)
During sentencing, the court stated:
 * * * [T]here is some doubt in my mind as to whether or not Mrs. Ross has properly and accurately identified you.
* * *
 The only doubt in my mind is whether she has accurately identified you. And she's an elderly person. She does not appear to have even average eyesight, and there may have been a situation where because of your frequenting this apartment, this home, on prior occasions, that there may be some suggestion in her mind that you were this person.
 I eliminated all reasonable doubt from this because of the manner in which she testified. * * * (Emphasis added.) (Tr. 209-210.)
The court then imposed a six-year prison term on Mays for each of the three counts he was found guilty of, to run concurrently.
In its judgment entry issued subsequently, the court stated the following:
 The court returns a verdict of guilty to aggravated burglary ORC 2911.11 as amended in Count One, guilty of aggravated robbery ORC 2911.01 as amended in Count Two, guilty of felonious assault ORC 2903.11 as amended in Count Three and further finds defendant not guilty of firearm specifications as charged in Counts One, Two and Three. (Emphasis added.)
Mays now appeals, raising four assignments of error for our review. His first assignment of error states:
 I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE PRE-TRIAL AND IN-COURT IDENTIFICATIONS MADE BY MRS. ROSS.
Mays contends that the trial court should have suppressed both Ross's pre-trial and in-court identifications because the identification procedure employed by the police, namely, a photo array containing his allegedly disproportionate photo, coupled with a singular live identification, had been prejudicially suggestive. He further challenges that the trial court, while expressing doubt about the accuracy of Ross's identification, nonetheless admitted evidence in connection with her identification of him.
The state contends that Mays failed to carry his burden of proof to demonstrate the suggestiveness of the identification procedure.
The issue then for our review is whether the trial court properly admitted the identification evidence in this case.
In State v. Thompson (1998) 127 Ohio App.3d 511, the court stated:
 The defendant has the burden to show the court that the identification procedures were unnecessarily suggestive. (Citation omitted.)
 In State v. Halley (1994) 93 Ohio App.3d 71, 76, 637 N.E.2d 937, 940, the court stated:
 The threshold question is whether the photo identification is impermissibly suggestive. All identification processes are inherently suggestive. Due process is violated only when the process is so impermissibly suggestive that the identification is unreliable in that there exists a substantial likelihood of irreparable misidentification."
Furthermore, in State v. Barnett (1990), 67 Ohio App.3d 760, the court points out that in a showup or presentation of a single photograph, one of the strongest of external factors which may be used to prove the accuracy of the identification is the situation where the witness already knew the perpetrator before the crime was committed.
Here, having examined the photo array, we do not perceive any significant irregularity in its display of six black males, all of whom displayed similar hair styles and similarly patterned facial hair. Moreover, the subsequent singular in-person identification is not unduly suggestive, because Ross had already made a positive identification of Mays from the photo array; more importantly, underlying the accuracy of her identification is the fact that Ross had seen Mays visiting her nephew on at least five occasions prior to the day of her assault and testified that she had seen him and briefly spoken with him earlier on the day of her assault. Because of her prior independent knowledge of Mays, the record does not demonstrate a substantial likelihood of irreparable misidentification in the procedure employed by the police rendering Ross's identification to be so impermissibly suggestive as to require suppression. Barnett, supra; Thompson, supra.
As to the contention that the trial court expressed its doubt of the accuracy of Ross's identification yet admitted the identification into evidence, our review of the record reveals that the court, after expressing its concerns, went on to conclude: I eliminated all reasonable doubt from this because of the manner in which [Ross] testified. Because the level of certainty demonstrated by the witness is a factor the court considers under the totality of the circumstances approach in its determination of reliability of an identification, we conclude that the court did not err in admitting Ross's identification. See State v. Jells (1990), 53 Ohio St.3d 22, 27-28.
Accordingly, Mays failed to carry his burden to prove that the identification procedure had been impermissibly suggestive and we therefore overrule this assignment of error.
Mays' second assignment of error states:
 II. THE TRIAL COURT ERRED IN AMENDING THE INDICTMENT SUCH THAT THE IDENTITY OF THE CRIME WAS CHANGED IN VIOLATION OF CRIM.R. 7(D).
Mays first points out that language of the indictment charging him with aggravated burglary, aggravated robbery and felonious assault all referenced the subsection of the offenses which requires the proof of the use of a deadly weapon or dangerous ordinance. He then refers us to the trial court's journal entry where the court stated that it returns a guilty verdict to the count of aggravated burglary, aggravated robbery, and felonious assault of Ross, as amended. This as amended language, coupled with the trial court's acquittal of the firearm specification accompanying the various counts, Mays argues, means that the trial court found insufficient evidence to support the use of a deadly weapon and, instead, found him guilty of aggravated burglary and aggravated robbery based on the alternate ground of infliction of, or threat to inflict, physical harm, thus effectively amended the indictment and changed the identify of the crime, in contravention of Crim.R. 7(D).
The state counters that the trial court did not amend the indictment and that the trial court had the discretion to render inconsistent verdicts regarding specifications and the underlying charge.
The issue for our review thus concerns whether the trial court amended the indictment in violation of Crim.R.7(D).
Crim.R. 7(D) states in pertinent part:
 The court may at any time before, during, or after a trial amend the indictment * * * in respect to * * * any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment * * * the defendant is entitled to a discharge of the jury * * * and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made * * *.
In this case, the state indicted Mays on four counts. Count One relates to aggravated burglary and alleges that he:
 did by force, stealth, or deception, trespass in an occupied structure * * * when Mary Ross * * * was present, with the purpose to commit * * * any criminal offense and while having a deadly weapon * * * to wit: gun on or about his person under his control.
Count Two relates to aggravated robbery and alleges that he:
 did, in attempting or committing a theft offense * * * upon Mary Ross have a deadly weapon to wit: gun, on or about his person or under his control and either displayed the weapon, brandished it * * * or used it.
Counts Three and Four relate to felonious assault and allege that he did knowingly cause or attempt to cause physical harm to Mary Ross and Trayshawn Ross, respectively, by means of a deadly weapon or dangerous ordnance, to-wit: gun.
Furthermore, each of these indictments contained two firearm specifications. The transcript reveals that the court found the state had proven its case with respect to Count One, Two, and Three, but found that the firearm specifications did not apply. However, in its subsequent journal entry, the trial court stated that it found Mays guilty of aggravated burglary as amended in count one, guilty of aggravated robbery as amended in count two, and guilty of felonious assault as amended in count three. (Emphasis added.)
Mays therefore alleges that the trial court amended the indictment and found him guilty without complying with Crim.R. 7(D).
Our focus here concerns the distinction between the definition of a deadly weapon, referenced in the underlying charge, and a firearm, referenced in the specifications.
R.C. 2923.11 defines the terms deadly weapon and firearm:
 (A) "Deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.
 (B)(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
While the journal entry recording the verdict of the trial court appears to vary from the announcement of its verdict in open court, in reality, it does not, nor is there any evidence to support the theory advanced by Mays that the trial court somehow amended the indictment in violation of Crim.R. 7(D).
In returning its verdict, the trial court found Mays not guilty of the firearm specifications, presumably because the state did not offer evidence regarding the operability of the weapon. However, the state did produce testimony that Mays struck Ross on the head with a handgun, a device capable of inflicting death, which the trial court could have considered in returning its guilty verdicts on the underlying charges of aggravated burglary, aggravated robbery, and felonious assault involving the use of a deadly weapon. Therefore, these are not inconsistent verdicts, nor do they imply a Crim. R. 7(D) amendment of the indictment by the trial court.
Rather, in its journal entry of conviction, the court inadvertently described its action of finding Mays not guilty of the firearm specifications as an amendment of the original indictment. However, the court never actually amended the indictment; it merely found Mays not guilty of the firearm specifications.
We therefore conclude that the trial court neither violated Crim.R. 7(D) nor returned inconsistent verdicts. Accordingly, this assignment of error is overruled.
The third assignment of error states:
 III. MR. MAYS WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL INTRODUCED COPIOUS EVIDENCE FOR MR. MAYS' DRUG ADDICTION, CAUSING HIM TO BE PREJUDICED BY EVIDENCE OF MOTIVE.
Mays points out that during the direct examination of Leslie Campbell, defense counsel elicited testimony regarding his drug addiction, which opened the door to questions on cross-examination by the state regarding the propensity of crack addicts to use violence and possibly unlawful means by which Mays supported his crack habit. Because his counsel introduced the allegedly prejudicial evidence regarding a possible motive for committing these crimes, Mays argues that he received ineffective assistance of counsel, claiming that the outcome of the trial may have been different without the extensive evidence of his drug use.
To sustain his claim that his counsel had been ineffective, Mays must demonstrate both deficient performance and that but for such conduct, the outcome of the trial would have been different. See Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136. Moreover, strategic or tactical decisions made by defense counsel which are well within the range of professionally reasonable judgment need not be analyzed by a reviewing court. Strickland, supra.
Here, defense counsel knew or should have known that Campbell had knowledge of Mays' prior drug use as well as in the days immediately preceding the day of the crime and that she would be subject to cross-examination on this subject. Nonetheless, counsel made a tactical decision to call Campbell as a character witness for Mays. Also, we recognize that defense counsel could have elicited testimony from Campbell about Mays' drug use to preempt any damaging cross-examination of her on that subject. Because these strategic decisions come within the range of professionally reasonable judgment, we need not analyze the tactics involved, and therefore conclude that Mays has not demonstrated his counsel's performance to be so deficient as to justify reversal.
Furthermore, the court, while ruling on the state's objection to Campbell's testimony about Mays' drug use, stated that [i]t's nothing that's really material to [the state's] case, and, in its reasoning for the guilty verdict, made no mention of Mays' drug use as a possible motive for the crime. Therefore, Mays failed to demonstrate that but for his counsel's introduction of evidence of his drug use, the outcome of the trial would have been different. Consequently, his claim of ineffective assistance of counsel is not well taken, and we overrule this assignment of error.
Mays' fourth assignment of error provides:
 IV. TRIAL COURT ERRED IN DENYING APPELLANT'S CRIM.R. 29 MOTION FOR ACQUITTAL, AS THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS FOR AGGRAVATED BURGLARY, AGGRAVATED ROBBERY AND FELONIOUS ASSAULT.
Mays claims that the state's evidence is insufficient to support the guilty verdict in that the state failed to prove his possession or use of a deadly weapon or dangerous ordnance, an element required for aggravated burglary, aggravated robbery and felonious assault. Mays argues that the trial court specifically found that the evidence adduced at trial did not support the use of a firearm and further that the state did not present sufficient evidence to support the existence of a deadly weapon. The state counters that it presented testimony from the victim that she had been beaten with a handgun and thus the evidence is sufficient to prove the deadly weapon element of these offenses.
In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, syllabus.
Here, although the court found that the state did not meet its burden of proof on the use of a firearm, it does not follow from that finding that the state had not presented sufficient evidence to prove Mays' use of a deadly weapon. From the evidence presented by the state, any rational trier of fact could have found that an instrument which had caused injuries to the victim's head requiring one hundred stitches is an instrument capable of inflicting death and therefore meets the definition of a deadly weapon.
Consequently, we conclude that viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the state has proven the essential element of use of a deadly weapon or dangerous ordnance beyond a reasonable doubt. This assignment of error is not well taken.
On the basis of the foregoing, we affirm the judgment of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, ADM.J. and COLLEEN CONWAY COONEY, J. CONCUR.