This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Jeffrey Hickman ("Hickman"), appeals from the decision of the Summit County Court of Common Pleas convicting him of aggravated burglary, kidnapping, robbery, and two counts of rape. We affirm.
 I.
On June 4, 2001, Hickman was indicted on one count of aggravated burglary, one count of kidnapping, one count of robbery, and two counts of rape. He entered a plea of not guilty on all counts, and the matter proceeded to jury trial on November 5 and 7, 2001. The jury found Hickman guilty on all five counts. The trial court sentenced him to ten years imprisonment for aggravated burglary, eight years for kidnapping, seven years for robbery, eight years for one of the rape charges, and ten years for the other rape charge. The court ordered the sentences for aggravated burglary, robbery, and the ten-year rape sentence to run consecutively; the remaining sentences, for kidnapping and the seven-year sentence for rape, were to run concurrently. This appeal followed.
 II. Assignment of Error One "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE EYEWITNESS IDENTIFICATION AS UNRELIABLE."
In his first assignment of error, Hickman argues that the trial court erred when it denied his motion to suppress the eyewitness identification. We disagree.
We begin by noting that an appellate court reviews a trial court's ruling on a motion to suppress de novo. State v. Russell (1998),127 Ohio App.3d 414, 416, citing Ornelas v. United States (1996),517 U.S. 690, 698-699, 134 L.Ed.2d 911. However, an appellate court reviews the findings of fact only for clear error, giving due deference to the trial court's findings of fact, because the trial court assumes the role of trier of fact when ruling on a motion to suppress and therefore is in the best position to resolve factual questions and evaluate credibility of witnesses. Id.
Hickman argues that the photo array shown to the victim, Andrea Thomas ("Thomas"), was impermissibly suggestive and that improper techniques were used. He contends that, therefore, a risk of irreparable mistaken identification exists, and the identification should be suppressed, pursuant to Neil v. Biggers (1972), 409 U.S. 188, 34 L.Ed.2d 401. The trial court found that no evidence was presented that established that the display was impermissibly suggestive.
Courts utilize a two-step process in determining whether a witness' pretrial identification of a suspect is admissible. State v. Barnett
(1990), 67 Ohio App.3d 760, 768. First, the court must determine whether the procedure used to identify the suspect was impermissibly suggestive. Id. The court looks to several factors in this determination, such as the size of the array, its manner of presentation, and its content. State v.Brown (Aug. 19, 1998), 9th Dist. No. 18591. The court will suppress such identification only if "the picture of the accused, matching descriptions given by the witness[es], so stood out from all of the other photographs as to `suggest to an identifying witness that [that person] was more likely to be the culprit.'" Id., quoting Jarrett v. Headley (C.A. 2, 1986), 802 F.2d 34, 41. If the court finds that the procedure was impermissibly suggestive, the focus then shifts to reliability, i.e.,
whether the suggestive procedure created a substantial likelihood of misidentification. Barnett, 67 Ohio App.3d at 768.
At the hearing on Hickman's motion to suppress, Thomas and Detective Bertina King of the Akron Police Department testified that Detective King showed Thomas nine colored Polaroid pictures. Each of the pictures depicted men with similar facial features and hair color, and each one depicted a man with facial hair. Because Hickman failed to demonstrate that the pretrial identification procedure was impermissibly suggestive, the trial court correctly denied his motion to suppress evidence of the witness identification. Accordingly, Hickman's first assignment of error is overruled.
 Assignment of Error Two "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ALLOWING DNA EVIDENCE AT TRIAL OVER THE OBJECTIONS OF DEFENDANT."
In his second assignment of error, Hickman challenges the trial court's admission of expert testimony of Anthony Tambasco ("Tambasco"), a forensic scientist with, and the director of, the Mansfield Police Department Crime Laboratory, and Sarah Custis ("Custis"), a forensic scientist with the Ohio Bureau of Criminal Investigation. Hickman asserts that neither of the experts was qualified in the fields of molecular biology and population genetics, and therefore, neither expert's testimony concerning DNA test results was admissible. We disagree.
The trial court has broad discretion in the admission and exclusion of evidence. State v. Hymore (1967), 9 Ohio St.2d 122, 128. This includes the determination as to whether an individual is an expert. See State v.Hartman (2001), 93 Ohio St.3d 274, 285. An appellate court will not disturb evidentiary rulings absent an abuse of that discretion. Id. An abuse of discretion signifies more than merely an error in judgment; instead, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Berk v. Matthews (1990), 53 Ohio St.3d 161,169. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Evid.R. 702 governs expert testimony and provides that a "witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." Evid.R. 702(B). Special education or certification is not necessary to qualify a witness as an expert. Hartman, 93 Ohio St.3d at 285. Furthermore, "[t]he individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." Id.
Tambasco testified that he has a degree in Criminalistics from State University College in New York at Buffalo. He also admitted taking classes in biochemistry, genetics, and molecular biology. He has attended international symposiums and various workshops and training sessions on DNA analysis. He has also taken courses on population genetics with the Midwestern Association of Forensic Scientists and a one-day training class at the Bureau of Criminal Investigation.
Custis testified that she has a bachelor's degree in biochemistry from Knox College in Galesburg, Illinois. She has completed extensive training in DNA analysis, including a five-month training program at the Bureau of Criminal Investigation. She has also performed DNA analysis on hundreds of samples. She testified that she uses a population database provided by the Federal Bureau of Investigation in order to calculate statistics of finding the same DNA profile in the general population.
Both Tambasco and Custis testified to their vast knowledge and experience concerning DNA analysis. We find that the trial court did not abuse its discretion when it admitted the expert testimony of Tambasco and Custis. Accordingly, Hickman's second assignment of error is overruled.
 Assignment of Error Three "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ALLOWING EVIDENCE OF FINGERPRINT TESTING WHERE THE PROPER FOUNDATION FOR SUCH EVIDENCE WAS NOT ESTABLISHED, AND WHERE THE EXPERT WITNESS HAD ALREADY PREJUDGED THAT APPELLANT'S PRINTS MATCHED PRINTS TAKEN FROM THE SCENE."
Hickman's third assignment of error challenges the admission of evidence concerning fingerprint testing. He asserts that the two known fingerprint records identified as Hickman's fingerprints were not authenticated, no chain of custody was presented concerning these two records, and that, therefore, it was error to allow testimony that Hickman's fingerprints matched a latent print discovered on the scene. We disagree.
Detective Fox, with the Akron Police Department's Identification Bureau, testified that he compared a latent print found at the scene with a fingerprint card taken in 1986, labeled as being the prints of Hickman. Detective Fox testified that the prints were made by the same individual. Detective Fox further testified that while in his presence, Hickman was printed in court the previous day. These recent prints were admitted into evidence as an exhibit. Detective Fox compared these recent prints with the print card from 1986 and determined that they were from the same individual. Hickman contends that the trial court erred when it allowed testimony of the fingerprint analysis because the 1986 card was not authenticated and no evidence was presented to show the chain of custody of the prints taken in court.
As previously noted, the trial court maintains broad discretion in the admission of evidence. Evid.R. 901(A) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The chain of custody is part of the authentication and identification mandate set forth in Evid.R. 901 for the admission of evidence. State v. Brown
(1995), 107 Ohio App.3d 194, 200.
Although the prosecution bears the burden of establishing a proper chain of custody, that duty is not absolute. State v. Moore (1973),47 Ohio App.2d 181, 183. The state need not negate all possibilities of tampering or substitution; instead, the state need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur. Id.; Brown, 107 Ohio App.3d at 200. Any breaks in the chain of custody go to the weight afforded to the evidence, not to its admissibility. Id.
In this case, Detective Fox gave his opinion that the latent prints found on the scene matched those on the 1987 fingerprint card. He further testified that the recent set of Hickman's prints, taken of Hickman the previous day in the detective's presence, matched those on the 1987 fingerprint card. The testimony indicated that the 1987 fingerprint card was what the state claimed it to be, the fingerprints of Hickman. Accordingly, the trial court did not abuse its discretion when it admitted the evidence of the fingerprint analysis. Hickman's third assignment of error is overruled.
 Assignment of Error Four "THE COURT ERRED IN FAILING TO MERGE APPELLANT'S KIDNAPPING CONVICTION WITH THE RAPE CONVICTIONS."
In his fourth assignment of error, Hickman argues that the trial court erred when it denied his motion to merge his kidnapping conviction with the rape convictions. We disagree.
Hickman was convicted of kidnapping, in violation of R.C. 2905.01(A)(4), and rape, in violation of R.C. 2907.02(A)(2). R.C. 2905.01 provides, in pertinent part:
 "(A) No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
"* * *
 "(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]"
R.C. 2907.02(A)(2) provides:
 "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
Ohio's multiple count statute, R.C. 2941.25, states:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
Courts in Ohio apply a two-part test when determining if a defendant may be convicted of multiple counts pursuant to R.C. 2541.25. State v.Rance (1999), 85 Ohio St.3d 632, 639. First, the court must determine whether the two crimes are related to such a degree that the commission of one crime results in the commission of the other. Id. Then, the court must determine whether the offenses were committed separately or with separate animus. Id.
The Ohio Supreme Court has held that kidnapping, in violation of R.C.2905.01(A)(4), and rape, in violation of R.C. 2907.02(A)(2), can constitute allied offenses of similar import. See State v. Donald
(1979), 57 Ohio St.2d 73, syllabus.[1] A defendant cannot, therefore, be convicted for both offenses unless the offenses were committed separately or with separate animus. In establishing whether kidnapping and an offense of the same or similar import are committed with separate animus, the Ohio Supreme Court set forth the following guidelines:
 "Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions[.]" State v. Logan
(1979), 60 Ohio St.2d 126, syllabus.
Therefore, the issue is "whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense." Id. at 135.
In this case, the evidence revealed that Hickman first pulled Thomas' sweatshirt over her head and choked her. He then started touching her. Upon Thomas' request for a glass of water, Hickman tied her hands behind her back and led her to the kitchen, holding her by her wrists and shoulder. Hickman led her back to the bedroom where he raped her. At some point during the rape, Hickman untied one of Thomas' wrists. After the rape, he led her to the bathroom, where he placed her in the bathtub, with the sweatshirt still over her head. Hickman's acts of tying the victim up and leading her throughout the house were not merely incidental to the rape. Thus, the crime of kidnapping was more than incidental to the rape and had a significance of its own. Accordingly, the two crimes were committed with separate animus. Hickman's fourth assignment of error is overruled.
 Assignment of Error Five "THE COURT ERRED IN PERMITTING THE STATE TO AMEND COUNT FOUR OF THE INDICTMENT."
In his final assignment of error, Hickman argues that it was error for the trial court to grant the state's motion to amend the indictment. The indictment identified the sexual conduct which formed the basis of one of the rape charges as fellatio, and the state moved to amend it to cunnilingus instead.
Pursuant to Crim.R. 7(D):
 "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."
Errors or omissions may, therefore, be corrected, at any point before, during, or after trial, so long as the amendment does not change the name or identity of the crime charged. Crim.R. 7(D); State v. O'Brien (1987),30 Ohio St.3d 122, 126. In this case, the amendment changes neither the name of the charge of rape, nor its identity. The penalty and the degree of the offense were not altered by the amendment. See O'Brien,30 Ohio St.3d at 126. Thus, the amendment was proper.
However, Crim.R. 7(D) also provides:
 "If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been [impaneled,] and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury."
Thus, if the amendment changes the substance of the indictment, the defendant is entitled to a discharge of the jury and a continuance if he suffered prejudice by the amendment. In this case, Hickman failed to request a discharge of the jury or a continuance. An appellate court need not consider an error which was not called to the attention of the trial court at a time when such error could have been avoided or corrected by the trial court. See State v. Hartman (2001), 93 Ohio St.3d 274, 289. As a result, the defendant waives all but plain error. State v. Moreland
(1990), 50 Ohio St.3d 58, 62; Crim.R. 52(B). Plain error does not exist unless, but for the error, the outcome at trial would clearly have been different. Moreland, 50 Ohio St.3d at 62.
We find no plain error in this case. Hickman fails to demonstrate he was surprised at the state's amendment. The victim's medical records indicated that Hickman "[attempted] oral sex on [the] victim followed by vaginal intercourse." The records, therefore, clearly identified the nature of the sexual conduct which formed the basis of the rape charge. Therefore, the trial court did not err when it granted the state's motion to amend the indictment. Hickman's fifth assignment of error is overruled.
 III.
Having overruled Hickman's five assignments of error, we affirm the decision of the Summit County Court of Common Pleas.
SLABY, P.J., WHITMORE, J. CONCUR.
[1] In Donald, the defendant's had been convicted of kidnapping, R.C.2905.01(A)(4), and rape, R.C. 2907.02(A)(1), which then provided that "[n]o person shall engage in sexual conduct with another" when "[t]he offender purposely compels the other person to submit by force or threat of force." The version of R.C. 2907.02(A)(1) in effect at that time is now codified at R.C. 2907.02(A)(2).