DECISION
Shawn P. Keith, a minor, appellee and cross-appellant, appeals the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, wherein the court found him to be a delinquent minor for having committed aggravated robbery, in violation of R.C. 2911.01(A)(1), a first-degree felony; using a firearm during the robbery, in violation of R.C. 2941.145; robbery, in violation of R.C.2911.02, a second-degree felony; assault, in violation of R.C. 2903.13, a first-degree misdemeanor; disorderly conduct, in violation of R.C. 2917.11, a fourth-degree misdemeanor; and illegal conveyance of marijuana into a detention facility, in violation of R.C. 2921.36, a fifth-degree felony.
On October 23, 2000, Jason Grezlik was working at a BP gas station in Columbus, Ohio. Two people entered the gas station and told Grezlik to empty the cash register. Both of the individuals were wearing dark clothing, black hooded sweatshirts with the hoods up, and masks. Grezlik testified that one of the individuals pointed a gun at him. After Grezlik gave them the money, the two individuals left and Grezlik called the police.
On October 28, 2000, Keith and another person came into to the gas station. Keith was wearing dark clothing, including a black sweatshirt, and Grezlik recognized him as one of the individuals that robbed him the week before. After the two left the store, Grezlik called the police. The police detained Keith nearby, and Grezlik identified Keith as one of the robbers at a "show-up." Keith claims that at the time of the offense he was at home.
Keith was charged on October 28, 2000 with aggravated robbery, in violation of R.C. 2911.01(A)(1), a first- degree felony; robbery, in violation of R.C. 2911.02, a second-degree felony; assault, in violation of R.C. 2903.13, a first- degree misdemeanor; disorderly conduct, in violation of R.C. 2917.11, a fourth-degree misdemeanor; and illegal conveyance of marijuana into a detention facility, in violation of R.C.2921.36, a fifth-degree felony. Count one of the complaint alleging aggravated robbery was amended on October 30, 2000, to include a firearm specification, in violation of R.C. 2941.145.
The case came for adjudication before the trial court on January 11, 2001. The court found Keith to be one of the two individuals who had robbed, at gunpoint, the gas station. The court found Keith a delinquent minor child for each of the charged offenses and committed him to the Department of Youth Services ("DYS") for a minimum of one year for the robbery offense; one year on the firearm specification, having found Keith's accomplice held the gun during the commission of the offense, to be served consecutively with the robbery commitment; and a minimum of six months for the illegal conveyance of marijuana, to be served concurrently with the other commitments. The court also ordered Keith to serve thirty hours of community service for the assault and disorderly conduct offenses. The court filed its judgment entry on January 18, 2001.
On February 20, 2001, the state filed a notice of appeal. On February 21, 2001, Keith filed a notice of cross- appeal. On April 19, 2001, this court filed a journal entry ordering the state to show cause why the appeal should not be dismissed for inability of the state to appeal the judgment of the trial court. The state asserts the following assignment of error:
 AN ACCOMPLICE IS AS CULPABLE IN A CRIME AS THE PRINCIPAL OFFENDER AND IS SUBJECT TO THE SAME PUNISHMENT AS THE PRINCIPAL OFFENDER.
Keith asserts the following assignment of error on cross-appeal:
 The finding that appellee and cross-appellant is a delinquent minor was not supported by sufficient evidence and was against the manifest weight of the evidence.
Initially, we must address the state's memorandum showing cause why its appeal should not be dismissed. We issued an April 19, 2001 journal entry ordering the state to show cause why the appeal should not be dismissed for inability of the state to appeal the judgment of the trial court. In the state's memorandum, it argued that its notice of appeal was filed by an assistant prosecuting attorney unfamiliar with appellate procedure. The state declared it was requesting leave to appeal because the trial court should have imposed a three-year sentence on the gun specification instead of one year, as required by R.C. 2941.145 and 2151.355(A)(7)(a)(ii), because the trial court clearly acknowledged that Keith's accomplice brandished the firearm. In response, Keith presents several arguments as to why the state should not be permitted to appeal this issue.
Keith first asserts that R.C. 2945.67(A) prohibits the state's appeal of the trial court's "partial acquittal," which he claims was reflected by the disposition of a one-year firearm specification under R.C.2941.141, which requires only possession or control of the firearm, instead of the three-year firearm specification under R.C. 2941.145, which requires that the firearm also be brandished, displayed, used, or its possession indicated by the offender. R.C. 2945.67(A) provides:
 A prosecuting attorney * * * may appeal as a matter of right * * * any decision of a juvenile court in a delinquency case, which decision grants a motion to dismiss all or any part of an indictment, complaint, or information, a motion to suppress evidence, or a motion for the return of seized property or grants post conviction relief pursuant to sections 2953.21 to 2953.24 of the Revised Code, and may appeal by leave of the court to which the appeal is taken any other decision, except the final verdict * * * of the juvenile court in a delinquency case. In addition to any other right to appeal under this section or any other provision of law, a prosecuting attorney * * * may appeal, in accordance with section 2953.08 of the Revised Code, a sentence imposed upon a person who is convicted of or pleads guilty to a felony.
We agree with Keith that the state's appeal does not qualify as an appeal as of right pursuant to R.C. 2945.67(A) because it is not an appeal of a decision granting a motion to dismiss all or any part of an indictment, complaint, or information, a motion to suppress evidence, or a motion for the return of seized property or granting post- conviction relief. The state's appeal can also not be pursuant to R.C. 2953.08, which pertains to adult sentencing.
R.C. 2945.67(A) also prohibits the state from appealing a final verdict. Keith claims the state's appeal is of a "final verdict" because it is an appeal of the trial court's partial acquittal of the gun specification pursuant to R.C. 2941.145. We disagree with Keith's terminology that the state's appeal should be viewed as an appeal of a "partial acquittal" of the three-year gun specification. Rather, the state's appeal is merely an appeal of what it claims was a sentencing error. The state does not argue that the trial court's failure to find Keith violated R.C. 2941.145 was supported by insufficient evidence or against the manifest weight of the evidence. Instead, the state asserts that the trial court did, in fact, find Keith's accomplice brandished the gun in violation of R.C. 2941.145, but that it then made a sentencing error by mistakenly or otherwise sentencing Keith as if he had violated R.C. 2941.141. It is well-established that the state has the right to seek leave to appeal upon the basis of claimed error in sentencing. State v. Howell (1981), 5 Ohio App.3d 92 . Thus, because the state does not attack the underlying findings of the court and only questions the legality of the sentence imposed, the state's appeal is not an appeal of a "final verdict."
Therefore, pursuant to R.C. 2945.67(A), the state could appeal only by leave of the court. Keith asserts that the state has still never filed a motion for leave to appeal, and thus, its appeal should be dismissed on this ground. Initially, we disagree that the state has not filed a motion for leave to appeal. In response to our April 19, 2001 journal entry ordering it to show cause why its appeal should not be dismissed for inability of the state to appeal the judgment of the trial court, the state filed a memorandum that specifically requested leave to appeal. Regardless, R.C. 2945.67(A) does not require a motion for leave to appeal be filed. The statute only indicates that the appellate court must grant leave before an appeal by the state may proceed. Keith cites several cases finding that the filing of a motion for leave to appeal is mandatory and jurisdictional in nature. However, all of these cases are adult criminal cases and rely upon App.R. 5 in finding that a motion for leave to appeal is required. Subsection (B) of App.R. 5, which is entitled "Appeals by leave of court in criminal cases," specifically requires a motion for leave to appeal be filed when leave is sought by the prosecution to appeal a judgment or order of the trial court. The Ohio Supreme Court recently found in In re Anderson (2001),92 Ohio St.3d 63, that juvenile court actions are civil proceedings, and appeals of such are governed by App.R. 4(A). Thus, these cases cited by Keith are inapplicable. App.R. 4(A) does not require a motion for leave to appeal be filed by the prosecution, as App.R. 5 requires. Although we believe the most efficient and preferable procedure to be utilized by the state when appealing from a juvenile disposition is for a motion for leave to appeal be filed concurrently with its notice of appeal, we can find no authority that requires such, and Keith directs us to none. Given the specific language of R.C. 2945.67(A) and the Ohio Supreme Court's recent pronouncement that juvenile cases are civil cases and proceed under App.R. 4, we find the state was not required to file a motion for leave to appeal concurrently with its notice of appeal. For the foregoing reasons, we grant leave to the state to appeal the trial court's sentence of Keith and proceed to the merits of the state's single assignment of error.
The state argues in its assignment of error, essentially, that the trial court erred in imposing a one-year sentence on the gun specification instead of a three-year sentence, because the trial court clearly found Keith's accomplice brandished the firearm pursuant to R.C.2941.145. R.C. 2151.355(A)(7)(a)(ii) indicates that if a child is adjudicated delinquent for committing an act that would be a felony if committed by an adult, and is committed to the legal custody of DYS, and if the court determines that the child, if an adult, would be guilty of a specification of the type set forth in R.C. 2941.145, the court must commit the child to the custody of DYS for a period of three years. R.C.2151.355(A)(7)(a)(i) indicates that the child, if an adult, would be guilty of a specification of the type set forth in R.C. 2941.141, the court must commit the child to the custody of DYS for a period of one year. The gun specification contained in R.C. 2941.141 controls when an offender has a firearm on or about the offender's person or under the offender's control while committing the offense but does not display, brandish, or use the firearm to facilitate the commission of the offense. The gun specification contained in R.C. 2941.145 controls when the offender has a firearm on or about the offender's person or under the offender's control while committing the offense and displays the firearm, brandishes the firearm, indicates that the offender possesses the firearm, or uses it to facilitate the offense.
As mentioned above, Keith asserts that the one-year sentence imposed by the trial court demonstrates the court "acquitted" him of the gun specification in R.C. 2941.145, which requires use of a firearm, and instead found only a violation of R.C. 2941.141, which requires mere possession. However, we cannot depend upon the juvenile court's sentence to determine the trial court's decision, but must examine the court's specific findings on this issue. After reviewing the record, we agree with the state that the trial court did find that Keith's accomplice brandished and used the firearm in commission of the offense. Grezlik testified that Keith's accomplice pointed the gun at him and no evidence to the contrary was presented. The trial court found Grezlik to be a credible witness overall, and there is nothing to indicate the trial court did not believe Grezlik's testimony on this point. Further, during the oral pronouncement of its decision, the trial court found that "the facts indicate beyond a reasonable doubt that Shawn Keith was one of the two young men who held up the BP station at gun point on October 23rd in the morning." (Emphasis added.) While proceeding to sentencing, the court then stated, "I think basically the issue for me is the seriousness and the fact the gun was used at the ___ of the crime." (Emphasis added.) The trial court also stated during sentencing that "I realize that he wasn't the one carrying it but that it was used in the hold up." (Emphasis added.) The court also stated in its judgment entry that Keith was one of the two individuals that held up the BP store "at gunpoint."
Therefore, we find that the trial court found that Keith's accomplice brandished and used the gun in the commission of the crime. An unarmed juvenile accomplice who actively participates in a robbery where the victims are held by the other accomplice at gunpoint is subject to a firearm specification contained in R.C. 2941.145, and the mandatory commitment time for such is three years. In the Matter of Brandon Foster (May 13, 1998), Lorain App. No. 97CA006766, unreported; see, also, State v. Chapman (1986), 21 Ohio St.3d 41, paragraph one of syllabus. In the present case, the trial court sentenced Keith to only a one-year commitment on the gun specification. A court has no power to substitute a different sentence for that provided by statute or one that is either greater or lesser than that provided for by law. Colegrove v. Burns (1964), 175 Ohio St. 437, 438. An attempt to disregard statutory requirements when imposing a sentence renders the sentence null or void. State v. Beasley (1984), 14 Ohio St.3d 74. Thus, the trial court erred in sentencing Keith to one year instead of three years as required by the statute. We would also note that although Keith argues the state failed to point out the error to the court below and has waived any error in this regard, it is plain error for a court to impose an unlawful and void sentence. State v. Rohda (1999), 135 Ohio App.3d 21. The state's assignment of error is sustained.
Keith first argues in his assignment of error on cross-appeal that the trial court erred in failing to grant his Crim.R. 29 motion, and its finding that he was a delinquent minor was not supported by sufficient evidence. The standard of review under Crim.R. 29(A) is sufficiency of the evidence. In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Id., at paragraph two of syllabus. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
Keith first contends that, with respect to both the aggravated robbery and robbery counts, the evidence was insufficient to establish him as the person who robbed the gas station. Keith asserts that the circumstances demonstrate a high likelihood of misidentification by Grezlik, the only eye witness to the incident to testify. We disagree. Grezlik testified that two boys came into the store wearing black hooded sweatshirts and masks, and one pointed a gun at him. In addition, Grezlik testified that Keith was the one who did not have the gun and was wearing an orange-tan Ninja mask that was not pulled up all the way. Grezlik said Keith's face was exposed to the bottom of his nose, and he could see his cheeks, eyes, and forehead. Although the defense attempted to draw a conflict between Grezlik's in-court testimony that Keith's mask was a Ninja mask and his description of it as a "handkerchief" during his 9-1-1 call, Grezlik clarified that he did not know what the actual garment was, and was only describing how it was pulled tightly against his face, which he considers "Ninja style."
Grezlik also testified Keith returned to the store about a week later wearing the same black hooded sweatshirt and that he recognized Keith as the robber without the gun. When he made eye contact with Keith, Keith left, and they stared at each other through a glass window. He testified that he saw Keith say something to his friend, and they looked at him, laughed, and then left. Grezlik testified that the black sweatshirt was not a factor in initially identifying Keith and that he did not point out the sweatshirt until he later talked to the police. He said he identified Keith through his eyes when they looked at each other and recognized him because of the way Keith stared at him. Although Keith points out that Grezlik called the police and told them he was "pretty sure" Keith had been one of the robbers, he testified at trial that he had been one hundred percent sure that Keith was the one who robbed him.
Grezlik also testified that he recognized Keith because he had been in the store about once a week in the past couple of months. He stated that Keith had been in the store three days before the robbery to buy cigars, and he had asked for Keith's identification because he looked young. This testimony is particularly important because it indicates that Grezlik had known Keith prior to the crime. Having known the perpetrator prior to the commission of the crime provides one of the strongest arguments in support of the accuracy of the identification. See State v. Barnett (1990), 67 Ohio App.3d 760, 768; State v. Young (Dec. 27, 1999), Mahoning App. No. 96 CA 256, unreported. Further, Grezlik's later description of the robbers as being under eighteen was consistent with his testimony that when he had previously carded Keith, Keith told him he did not have identification, left the store, and eventually had to find somebody outside the store to buy the cigars for him.
Keith also tries to find inconsistencies in Grezlik's physical description of him. However, like the trial court found, we find these apparent discrepancies minor and immaterial, particularly when construing the evidence most strongly in favor of the state. Grezlik testified at trial that the robber at the store who did not have the gun was over 5'10" and the one with the gun was several inches shorter. Although the police report of the incident indicated that Grezlik said both individuals who robbed the store were 5'9" to 5'11", Grezlik testified that he told the police the boy without the gun was taller than the boy with the gun, and that the police report was incorrect. He admitted that he told the 911 operator within seconds of the crime that both suspects were 5'6" to 5'9", but he explained that he had tried to do the best he could in making the estimate quickly. He also testified that the robber without the gun was one hundred sixty pounds and the other one was one hundred fifty pounds and admitted that he told the police that both weighed between one hundred fifty and one hundred sixty pounds. However, even if the police report did not indicate that one robber weighed more than the other, Keith's testimony of their respective size still fits within the parameters of the weights indicated in the police report. Further, although Grezlik told the police that the robbers were between fourteen and sixteen years old, but then later said they were between fifteen and eighteen years old, this vague discrepancy still fits within his general description that the robbers were young boys under eighteen years of age. In addition, although the defense attempted to find contradiction in Grezlik's testimony at trial that Keith was wearing black jeans versus his testimony at the probable cause hearing that Keith was wearing "dark" pants, we also find such distinctions unpersuasive.
Therefore, construing the evidence in favor of the prosecution, any rational trier of fact could have found that Keith's identity as the perpetrator was established beyond a reasonable doubt. The trial court's determination was supported by sufficient evidence, and the trial court did not err in denying his motion pursuant to Crim.R. 29.
Keith next contends that the testimony of his parents precludes a finding that he was the unarmed person who robbed the gas station. This raises a manifest weight of the evidence argument. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v. Gray (Mar. 28, 2000), Franklin App. No. 99AP-666, unreported. "In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony." State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193.
In a manifest weight of the evidence review, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. "The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Burdine-Justice (1998), 125 Ohio App.3d 707, 716. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997),118 Ohio App.3d 371, 377.
Keith's mother, Timillion Lindsey, and his stepfather, Tyrone Lindsey, testified on behalf of Keith, and their testimony conflicted with the timeline Grezlik alleged. Grezlik testified that he arrived at work around 7:00 a.m. and first saw the robbers at approximately 7:30 a.m. The robbery took less than one minute. However, both Mr. and Mrs. Lindsey testified that at the time of the robbery, Keith was at home, which was only one minute from the gas station, according to Mrs. Lindsey. On the morning of the robbery, Mr. Lindsey was having back pain and did not go to work, but he was to drive his wife to work. He testified that around 7:30 a.m., he called upstairs for Keith to get up and get ready for school, not knowing that Keith had been removed from school. He stated that Keith responded, "yes, sir," and then he went outside to start his car. He and his wife then drove to the gas station, arriving at about 7:37 a.m. or 7:38 a.m., but had to return home when Mr. Lindsey realized he forgot his wallet at home. When he got back home, it was about 7:40 a.m., and he called upstairs to Keith again to get ready for school, and Keith responded, "yes, sir." Mr. Lindsey then got his wallet and left again. On his way back home, he stopped at Burger King to get food for the children. Mr. Lindsey testified he got back to the house at about 8:15 a.m., and Keith and their other children were in his bed watching television. Mr. Lindsey asked Keith why he was not at school, and Keith handed him a letter indicating that he had been suspended from school. Mr. Lindsey left the house at about 10:30 a.m. for his doctor's appointment.
Mrs. Lindsey testified that at about 7:30 or 7:35 a.m., she went into Keith's room and, knowing he had been removed from school, told him that he had better get up and do something because his stepfather had just called off from work and would be staying home. She said she then left with her husband, but they had to return to the house to get his wallet. After he got his wallet at about 7:40 a.m., during which she stayed in the car, Mr. Lindsey drove her to work, and she arrived there at 8:00 a.m.
After reviewing the record, weighing the evidence and all reasonable inferences, we find that the trial court's decision was not against the manifest weight of the evidence. We agree with the trial court's resolution of the conflicting testimony. There was no reason not to believe the testimony of Grezlik, and the trial court was in the best position to weigh his testimony against Mr. and Mrs. Lindsey's testimony. The trial judge found that, although believing Mr. and Mrs. Lindsey were not purposefully lying, their memories regarding the exact timeline of the morning were not precise. The trial court noted that Keith's parents were not required to recall the events of the morning of October 23 until five and one-half days later when Keith was arrested, and their recollection was incorrect. The trial court also found, and we agree, that because Keith lived only "a minute" from the gas station, even a difference of five minutes would have been significant time to allow Keith to meet up with an accomplice on the way to the gas station, rob it, and return home. We find that Keith had enough time while his parents were gone to commit the crime as alleged. Thus, the trial court did not clearly lose its way and create such a manifest miscarriage of justice that the delinquency adjudication must be reversed. See Thompkins, supra. Importantly, this is not an exceptional case in which the evidence weighs heavily against the conviction. See id. Therefore, the trial court's decision was not against the manifest weight of the evidence.
Keith next asserts in his assignment of error that, with respect to the robbery count, the evidence was insufficient to establish that he threatened to inflict harm to another and such finding was against the manifest weight of the evidence. The delinquency complaint alleged that Keith committed robbery as defined in R.C. 2911.02, which states:
 (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
* * *
 (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]
In the case at bar, Keith's accomplice put a gun to Grezlik's chest, and they both demanded Grezlik open the cash register and give them money. Keith took the money from him once Grezlik got it out of the register. Grezlik testified that he was afraid he was going to get shot during this exchange. Clearly, Keith and his accomplice threatened to inflict physical harm within the meaning of R.C. 2911.02(A)(2) by pointing the gun directly at Grezlik's chest and demanding money. See State v. Parsons (Mar. 5, 1999), Hamilton App. No. C-980209, unreported (pointing a gun at the victim and demanding money constitutes a threat to inflict physical harm within the meaning of R.C. 2911.02[A][2]); State v. Griffin (Dec. 11, 1998), Hamilton App. No. C-980143, unreported (holding gun to chest of victim and demanding money constitutes a violation of R.C. 2911.02[A][2]); State v. Reed (June 12, 1998), Lucas App. No. L-97-1133, unreported (pointing a gun at the victim from six feet away without speaking constitutes a threat to inflict physical harm in violation of R.C. 2911.02[A][2]). Given this evidence, we are unable to conclude no rational trier of fact could have found that the state had proved beyond a reasonable doubt that Keith threatened to inflict harm upon Grezlik. Therefore, we conclude that Keith's conviction was supported by sufficient evidence and the trial court properly denied his Crim.R. 29 motion for acquittal.
With regard to the manifest weight of the evidence argument, Keith presents no argument. Although there were a few insignificant inconsistencies in Grezlik's testimony on other issues, the record reflects that Grezlik's testimony regarding Keith and his accomplice's actions and statements was consistent, certain, and unchallenged. Because there was no jury, it was primarily the obligation of the trial court to assess the credibility of the witnesses and to weigh the evidence. The trial court found Grezlik's testimony credible. Based on our review of the record in this matter, we are unable to conclude that the court lost its way in assessing Grezlik's credibility. We find that Keith's conviction was not against the weight of the evidence. Therefore, Keith's assignment of error on cross-appeal is overruled.
Accordingly, we sustain the state's assignment of error and overrule Keith's assignment of error on cross- appeal. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed in part and reversed in part, and this case is remanded to that court for re-sentencing consistent with this decision.
DESHLER, J., concurs.
KENNEDY, J., concurs in judgment only.