OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court and the parties' briefs. Appellant Stevenbo Elliott appeals the decision of the trial court overruling his motion to suppress an identification and its fruits and denying his motion for a new trial. The issues we must address are: (1) whether the identification of Elliott was unreliable; (2) whether the new evidence presented by Elliott had been discovered since trial, and could not, in exercise of due diligence, have been discovered prior to trial; and, (3) whether Elliott presented sufficient corroborating circumstances to demonstrate the trustworthiness of the out of court statement. Although we conclude the trial court properly denied Elliott's motion to suppress the out of court identification as it was sufficiently reliable, we find the trial court abused its discretion by denying Elliott's motion for a new trial. The evidence presented by Elliott in support of the motion was sufficiently corroborated by the surrounding circumstances and could not have been discovered prior to trial. Accordingly, we reverse the decision of the trial court and remand this case for a new trial.
 {¶ 2} On August 1, 2000, around 9:30 P.M., Robert Roth, a Goshen Dairy truck driver, was loading his truck in the parking lot of the dairy. A man approached Roth and asked for assistance. Soon after, a second man brandishing a knife approached Roth and demanded money. Roth threw his duffel bag at the second man knocking the knife out of his hand. An altercation ensued between Roth and the first man and Roth punched the first man in the face. The first man fell to the ground and Roth tripped over him. While they were on the ground, Roth elbowed the man in the face. Both men then fled the scene.
 {¶ 3} Immediately after the incident, Roth went to a bowling alley located across the street, called the police, and provided a physical description of the assailants. The police searched the area and found a suspect who matched the description of the second man. However, Roth told the police he was not one of the assailants.
 {¶ 4} The next day the chief of police received a call from a store clerk advising him she had seen two men who fit the descriptions given by Roth. The chief picked up the two suspects, one being Elliot and the other a co-defendant, and brought the suspects to the station. The chief then called Roth and asked him to come to the station to see if the two suspects were the assailants from the night before. When Roth arrived, he was asked to identify the two men who were placed in separate rooms. Roth made a positive identification of the two men.
 {¶ 5} On October 25, 2000, a Grand Jury returned an indictment against Elliott on a charge of aggravated robbery in violation of R.C.2911.01(A)(3). Elliott then filed a motion to suppress the identification. After an evidentiary hearing was held, the trial court denied the motion on February 12, 2001. The case was tried before a jury that returned a verdict of not guilty on the aggravated robbery charge and guilty on the lesser-included offense of robbery. Elliott was then sentenced to five years in prison. Elliot timely filed a notice of appeal from that judgment.
 {¶ 6} However, prior to that filing, Elliot motioned the trial court for a new trial based upon newly discovered evidence. Elliott attached to that motion an affidavit of a woman claiming to have been told by another man he was responsible for the crime, not Elliott. The motion was subsequently heard by the trial court but was denied. The defendant filed an amended notice of appeal with the permission of this court. This appeal followed.
 {¶ 7} As his first of two assignments of error Elliot asserts:
 {¶ 8} "The trial court erred in overruling Appellant's motion to suppress the identification and its fruits, as the identification was unreliable and therefore offended due process."
 {¶ 9} When considering an appeal from a trial court's decision on a motion to suppress evidence, this court is presented with a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 328,332. On a hearing on a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Brooks (1996),75 Ohio St.3d 148, 154. On review, therefore, this court must defer to the trial court's findings of fact as long as they are supported by competent, credible evidence. State v. Medcalf (1996), 111 Ohio App.3d 142,145; State v. Guysinger (1993), 86 Ohio App.3d 592, 594. This court must then determine, using a de novo standard of review, whether the trial court reached the correct legal conclusion in applying the facts of the case. State v. Venham (1994), 96 Ohio App.3d 649, 653.
 {¶ 10} In the present case, Elliot requested that the trial court suppress a pre-trial identification made by Roth based on its unreliability. Due process requires a trial court suppress an identification if the confrontation was unnecessarily suggestive of the suspect's guilt and unreliable under all the circumstances. State v.Waddy (1992), 63 Ohio St.3d 424, 438, 588 N.E.2d 819; Manson v.Brathwaite (1977), 432 U.S. 98, 116, 97 S.Ct. 2243, 2254,53 L.Ed.2d 140, 155; Neil v. Biggers (1972), 409 U.S. 188, 196-198, 93 S.Ct. 375,34 L.Ed.2d 401. Suggestive confrontations are disapproved because they increase the likelihood of misidentification, which violates a defendant's right to due process. Neil, supra, 409 U.S. at 198-199. However:
 {¶ 11} "An unnecessarily suggestive identification process does not violate due process if such identification possesses sufficient indicia of reliability. [Manson v. Brathwaite (1976), 432 U.S. 98, 106,97 S.Ct. 2243, 2249, 53 L.Ed.2d 140.] The central question is whether under the totality of the circumstances the identification is reliable even though the confrontation procedure was suggestive. Neil, supra,409 U.S. at 199, 93 S.Ct. at 382." State v. Parker (1990), 53 Ohio St.3d 82,87, 558 N.E.2d 1164.
 {¶ 12} In the present case, Elliot was identified by Roth in a one man showup. A "showup" identification is inherently suggestive. See, e.g., Ohio v. Barnett (1990), 67 Ohio App.3d 760. However, "the admission of evidence of a `showup' without more does not violate due process."Neil, supra, at 198. Under the factors used in Neil, the showup must not only be overly suggestive, but create a substantial likelihood of misidentification. Id. at 199; Barnett, supra, at 768. Further, "[t]here is no prohibition against a viewing of a suspect alone in what is called a `one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy." State v.Madison (1980), 64 Ohio St.2d 322, 332, citing Bates v. United States
(C.A.D.C. 1968), 405 F.2d 1104, 1106.
 {¶ 13} Even if the trial court were to find the "showup" procedure was overly suggestive, it must still determine whether the identification was nonetheless reliable. To determine the reliability of the identification, the totality of the circumstances should be taken into account. "The focus, under the `totality of the circumstances' approach, is upon the reliability of the identification, not the identification procedures." (Emphasis sic.) State v. Jells (1990), 53 Ohio St.3d 22, 27,559 N.E.2d 464, citing State v. Lott (1990), 51 Ohio St.3d 160, 175,555 N.E.2d 293, and Manson.
 {¶ 14} "In order to determine the reliability of the identification, we must consider (1) the witness's opportunity to view the defendant at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification. Waddy, 63 Ohio St.3d at 439, 588 N.E.2d at 831, citing Neil, 409 U.S. at 199-200, 93 S.Ct. at 382, 34 L.Ed.2d at 411."State v. Davis (1996), 76 Ohio St.3d 107, 113, 666 N.E.2d 1099.
 {¶ 15} In the present case, Roth testified at the suppression hearing he was able to get a good look at the individual who first approached him since there was a light shining directly on his face. Roth explained the individual asked Roth for help and Roth responded "Just a second". Roth testified at the hearing the individual was around 6'2" and had a slim build. He had blondish brown hair, was wearing glasses, dirty colored blue jeans, and a light colored tee-shirt. However, on cross-examination, Roth admitted he never gave the police a specific description regarding height until the hearing, nor did he give a description regarding age.
 {¶ 16} Roth explained he followed the tall man over to where a short, stocky man was standing. There was a struggle with the short stocky assailant who wielded a knife and in an attempt to hit the stocky man, Roth accidentally punched the tall man in the left side of the face. The tall man fell to the ground and Roth tripped over him. Roth then elbowed the tall man in the face. The tall man jumped up and took off running.
 {¶ 17} After the altercation, Roth went to a nearby bowling alley to call the police and give a description of the suspects. Later that evening, the police brought an individual back to the scene who purportedly matched the description of the short stocky suspect. However, Roth told the police he was not one of the two men. The next afternoon, the chief of police called Roth and asked him to provide another description of the suspects. The chief then informed Roth he had two suspects in custody and wondered whether Roth could come to the station to see if they were in fact the assailants.
 {¶ 18} When Roth arrived at the station, the police told him they had two suspects in separate rooms and then asked him "to go in and identify them to see if that was them or not. "Roth testified that he was positive he was able to identify the tall man at the police station. Roth later admitted he had seen the same tall man about a month prior to the incident. Roth stated, at the time of the "showup", the man's nose area and left eye were swollen but that was not significant to his identification.
 {¶ 19} However, on cross-examination, Roth admitted the knife used by the stocky assailant was his "focus" because he was trying to avoid it and that is why he could give a very detailed description of the knife. Roth had previously testified at a preliminary hearing the knife was seven to eight inches long, with a chrome-like finish, and metal handles.
 {¶ 20} After hearing all the evidence, the trial court entered judgment stating:
 {¶ 21} "The Court is satisfied from the evidence that the victim in this case had ample opportunity to view the suspect on the night in question and that the scuffle that ensued between the victim and the two subjects whom he encountered caused him to focus his attention on them as well as the weapon. The Court finds that the statements at the Police Station by Mr. Roth indicate that he had no question in his mind concerning the identification of the defendant as one of the perpetrators and that the defendant's facial injuries and bent glasses from the prior night's altercation served to confirm his identification. Further, the fact that this identification occurred within a 24-hour period of the incident only adds to the reliability of the same."
 {¶ 22} Because the facts as decided by the trial court are supported by some competent, credible evidence, we must now determine, using a de novo standard of review, whether the trial court reached the correct legal conclusion. See Venham, supra. In essence, we must decide whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive. After reviewing the facts as they were decided by the trial court and the applicable legal standard, we reach the same conclusion as the trial court; the identification was reliable. Therefore, Elliot's first assignment of error is meritless.
 {¶ 23} As his second and final assignment of error, Elliot claims:
 {¶ 24} "The trial court erred in denying Appellant's motion for a new trial."
 {¶ 25} Elliot argues, pursuant to Crim.R. 33, he should have been granted a new trial based on the discovery of new evidence. Attached to his motion for a new trial, Elliot presented the trial court with an affidavit signed by Shaila Wood alleging that another individual, "Aaron Korbel" had made a statement against penal interest that he and another individual had actually committed the offense. At the hearing on the motion for a new trial, Aaron Korbel was subpoenaed but failed to appear. However, Elliot claims if a new trial were granted he would call Wood to testify regarding Korbel's statement.
 {¶ 26} In State v. Petro, (1947), 148 Ohio St. 505, 506,76 N.E.2d 370 the Ohio Supreme Court listed six criteria necessary to warrant a new trial in a criminal case based on newly discovered evidence. These criteria are listed in the syllabus as follows:
 {¶ 27} "* * * it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." Petro.
 {¶ 28} The State maintains Elliot has failed to meet these criteria as Korbel was named as a defense witness on March 20, 2001, prior to the defendant's trial. Because he was listed as a witness, the State argues due diligence in locating or interviewing Korbel would have led to the discovery of the evidence. In response, Elliott argued at the hearing on the motion he was unable to successfully serve Korbel with a subpoena to appear. Furthermore, Elliott claims he had no reason to believe Korbel had committed the crime, or for that matter would admit to committing the crime. Finally, Elliot claims Korbel's statement was not made until two months after the trial. We find Elliott's argument as to why he couldn't discover this information before trial has merit.
 {¶ 29} However, we must proceed with our analysis because the State further argues Korbel's statement would be inadmissible hearsay since Elliot has failed to demonstrate Korbel's unavailability. We disagree. Pursuant to Evid.R. 804(A), the definition of "unavailability of a witness" includes the following situations, those in which the declarant:
 {¶ 30} "(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement;
 {¶ 31} (2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so;
 {¶ 32} * * or
 {¶ 33} (5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means."
 {¶ 34} Given the circumstances of this case, if Korbel were summoned to court to testify, he would very well be deemed "unavailable" based upon a reasonable probability that he would be exempted from testifying based upon his privilege against self-incrimination. See Statev. Alvarez (Dec. 2, 1999), 10th Dist. No. 98AP-1375. Moreover, the record establishes that Elliott, "the proponent of the declarant's statement," had already unsuccessfully attempted "by process or other reasonable means" to procure Korbel's attendance at the hearing on the motion for a new trial. Accordingly, a finding of "unavailability" could be based upon Evid.R. 804(A)(5). See Id.
 {¶ 35} Having determined Korbel should have been deemed unavailable, the analysis now turns to the specific "declarant unavailable" exception applicable in this case. Pursuant to Evid.R. 804(B), declarations against penal interest are not to be excluded by the hearsay rule if the declarant is unavailable. This hearsay exception, Evid.R. 804(B)(3), provides as follows:
 {¶ 36} "Statement against interest. A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."
 {¶ 37} The determination of whether corroborating circumstances are sufficient to admit statements against penal interest as a hearsay exception, generally rests within the discretion of the trial court.State v. Landrum (1990), 53 Ohio St.3d 107, 559 N.E.2d 710 citing UnitedStates v. Guillette (C.A.2, 1976), 547 F.2d 743, 754.
 {¶ 38} This court recently addressed the sufficiency of the circumstances corroborating an out of court statement in State v. Scott
(Sept. 21, 2001), 7th Dist. No. 98 CA 124. In Scott, three inmates were listed as defense witnesses in discovery material. Before trial, subpoenas were served to secure the attendance of these inmates at trial. They were apparently being called to testify that they heard a fourth inmate, the declarant, incriminate himself as the shooter when he was in jail. However, the declarant invoked his privilege against self-incrimination and refused to testify.
 {¶ 39} A sworn statement of one of the inmates was proffered by the defense. In this statement, the inmate related that while in jail, he talked to both the defendant and the declarant about the incident, at which time the declarant bragged about shooting the victim. The defense then proffered the live testimony of another inmate who stated that while in jail, he overheard the declarant tell defendant that he did not mean to shoot the victim and asked the defendant if he "was going to tell on him". In addition, the defense presented corroborating evidence that an eyewitness identified the declarant as being with the defendant when they noticed each other on the street just prior to the shooting.
 {¶ 40} This court determined in Scott the trial court abused its discretion when it excluded the proffered testimony reasoning:
 {¶ 41} "The statement against interest hearsay exception will have no meaning if the burden on the defendant is overly strict. See Comments to Fed. Evid.R. 804. Additionally, we cannot say the exclusion was harmless. Rather, the exclusion affected appellant's substantial rights. See Evid.R. 103(A)(2); Crim R. 52(A). Appellant's whole defense revolves around Kendrick Mickel being the shooter. A jury may well have been more inclined to believe Scott's self-serving testimony if it heard three inmates testify that they heard Kendrick Mickel incriminate himself. Therefore, this assignment of error is sustained, and this case is reversed and remanded for a new trial." Id. at 11.
 {¶ 42} In the present case, Elliott claimed at his hearing on his motion for a new trial that the declarant matched the physical description of the stocky assailant given by Roth. That is precisely why he attempted to subpoena Korbel to appear at trial. Moreover, the person with whom Korbel claimed to have committed the crime allegedly fit the description of Elliott, himself. Elliott argues the general theory of his case was that Roth's identification was faulty because the description given by Roth was too generalized and fit too many people. Accordingly, we find the fact that one of two people who fit the general description given by Roth has allegedly confessed to the crime corroborates the out of court statement. We must next determine whether the trial court abused its discretion by disallowing the testimony.
 {¶ 43} We noted that the trial court first determined Elliott had failed to meet his burden of proving Korbel was unavailable. The trial court then determined the statement allegedly made by Korbel was uncorroborated. Finally the trial court found the defense failed to allege the new evidence would materially affect his substantial rights and merely stated it "could have altered the trial strategy."
 {¶ 44} We disagree for several reasons. First, Korbel should have been deemed unavailable based upon his failure to respond to a subpoena. Secondly, the trial court erred by placing too high a burden on Elliott to produce corroborating evidence when the rule only requires "corroborating circumstances." See Scott. Finally, we conclude, much like in Scott, the jury may have likely chosen to believe Elliott's self-serving testimony if they were presented with the out of court statement made by a person who fit the physical description given by Roth. Thus, the presentation of the out of court statement would do more than just change the strategy of trial counsel. It would create reasonable doubt in the minds of the jury that would ultimately lead to an acquittal. We conclude the trial court abused its discretion by refusing to grant the motion for a new trial given the unique circumstances of this case. Elliott's second assignment of error is meritorious.
 {¶ 45} Accordingly, the decision of the trial court is affirmed in part, reversed in part and this cause is remanded to the trial court for a new trial.
Waite, P.J., and Donofrio, J., concur.